# FREDERICK CORNELIUS *v.* LYDIA ROSARIO ET AL.
## (AC 33178)

Gruendel, Beach and Flynn, Js.

Argued April 16—officially released September 11, 2012

*James Colin Mulholland*, for the appellant (plaintiff).

*Joseph A. Marotti*, for the appellees (named defendant et al.).

*Opinion*

BEACH, J. The plaintiff, Frederick Cornelius, appeals from the trial court's granting of a motion for summary judgment in favor of the defendants, the city of Hartford (city) and Lydia Rosario, the city's then tax collector,[1] and denial of his motion for summary judgment.[2] The

---

[1] Albertina Ward and Patricia Franklin, the purchasers of the property at the tax sale, Edward Baum and J&E Investment were also named as defendants. The action was withdrawn as to Baum. The court granted a motion to strike the action as to Ward, Franklin and J&E Investment. Only the city of Hartford and Rosario are involved in this appeal; for simplicity we will refer to the city of Hartford and Rosario as the defendants.

[2] "[I]f parties file cross motions for summary judgment and the court grants one and denies the other, this court has jurisdiction to consider both rulings on appeal." *Hannaford* v. *Mann*, 134 Conn. App. 265, 267 n.2, 38 A.3d 1239, cert. denied, 304 Conn. 929, 42 A.3d 391 (2012).

plaintiff claims that the court erred in (1) determining that he lacked standing to challenge the adequacy of notice to a predecessor in title of the real property at issue, (2) determining that the defendants satisfied the notice requirement of General Statutes § 12-157 (a), (3) concluding that the steps taken by the defendants to notify the plaintiff's predecessor in interest of the tax sale of that property, when the plaintiff failed to record his interest in the property, satisfied due process, (4) concluding that the defendants were not obligated to provide him with notice of the tax sale because his interest in the property was not reasonably ascertainable and (5) denying his request to testify at the hearing on the motions for summary judgment and then failing to continue the matter to allow him to submit affidavits. We agree with the plaintiff that he has standing to challenge the adequacy of notice to his predecessor in title. We disagree with his remaining claims and, therefore, affirm the judgment of the trial court.

The plaintiff initiated an action in 2008, in which he sought to quiet title and to nullify a tax sale of a parcel of real estate located at 78 Beacon Street in Hartford (property). The plaintiff claimed that the property was illegally seized and sold without providing him with notice of the tax sale as required by § 12-157. The defendants filed a motion for summary judgment in which they argued that the plaintiff undeniably failed to record his warranty deed, and, thus, the tax sale of the property was conducted consistently with the requirements of § 12-157 (a), which required that notice be provided only to those with recorded interests in the property. The plaintiff, on the other hand, filed a motion for summary judgment as to the city on the ground that it had not provided notice to Mercury Mortgage Company, Inc. (Mercury), the plaintiff's predecessor in title, in accordance with § 12-157 (a).

The following facts are undisputed. On November 22, 2004, the plaintiff, a sophisticated real estate investor, purchased the property from Mercury, as an investment property. Neither the plaintiff nor his attorney recorded the warranty deed reflecting the sale in Hartford's land records. The real estate taxes were not paid on the property from January 1, 2004 through July 1, 2007. The defendants filed tax liens against the property on June 11, 2004, May 2, 2005, June 16, 2006, and May 25, 2007. On July 12, 2007, the defendants executed a tax levy on the property for unpaid taxes in the amount of $18,698.94, and sold the property to the highest bidders at the tax sale. Prior to executing the tax sale, the defendants attempted to provide notice to all record owners/taxpayers, lienholders, mortgagees and encumbrancers of the property after performing a search of the Hartford land records, city assessor's records and the tax division records to determine who was entitled to receive notice. The search of the records revealed that the owner of record was Mercury and that the law firm Hunt, Leibert, Chester & Jacobson, P.C. (Hunt Leibert), the Metropolitan District Commission (Metropolitan) and the city held liens on the property. There was no record of the plaintiff's interest in the property on Hartford's land records or in the assessor's records. Additionally, there was no record of the plaintiff ever having paid taxes on the property.

The defendants provided notice of the tax sale via certified mail to Mercury, Hunt Leibert and Metropolitan. Hunt Leibert and Metropolitan received notice of the tax sale. The notice to Mercury was returned as undeliverable. Attached to the defendants' motion for summary judgment was a copy of the undelivered letter, the authenticity of which was not contested. The letter was stamped: "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD." The

defendants attempted to find another address for Mercury and to locate an agent of Mercury. Ultimately, the defendants sent notice to Mercury's attorney, Hunt Leibert. The defendants did not provide notice to the plaintiff because his interest in the property did not appear of record. The court granted the defendants' motion for summary judgment and denied the plaintiff's motion for summary judgment. This appeal followed.

We first set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC,* 294 Conn. 311, 318, 984 A.2d 676 (2009).

I

The plaintiff first claims that the court erred in holding that he lacked standing to challenge the adequacy of notice to Mercury. We agree.

The ground presented by the plaintiff in his motion for summary judgment was that the defendants had not

provided notice to Mercury in accordance with § 12-157 (a). In denying the plaintiff's motion for summary judgment, the court determined that the plaintiff lacked standing to assert Mercury's rights.

The plaintiff argues that in ruling that he lacked standing to challenge the adequacy of Mercury's notice, the court overlooked General Statutes § 12-159. He argues that § 12-159 authorizes a person whose predecessor in title was entitled to notice of the tax sale under § 12-157 to contest the validity of the notice given to his or her predecessor in title.

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91–92, 971 A.2d 1 (2009). "[T]o determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within the zone of interests protected by the statute. . . . It has been [noted] that the zone of interests test bears a family resemblance to the scope of the risk doctrine in the law of torts.

. . . In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of [statutory] standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty owed to the plaintiff." (Internal quotation marks omitted.) *Albuquerque* v. *State Employees Retirement Commission*, 124 Conn. App. 866, 873–74, 10 A.3d 38 (2010), cert. denied, 299 Conn. 924, 11 A.3d 150 (2011).

We must determine whether the plaintiff was within the class of persons whom § 12-159 was designed to protect. This raises a question of statutory construction, which is a "[question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, [we first consider] the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic*

*District Commission,* 284 Conn. 838, 847, 937 A.2d 39 (2008).

Section 12-159 provides in relevant part: "Any deed, or the certified copy of the record of any deed, purporting to be executed by a tax collector and similar, or in substance similar, to the above, shall be prima facie evidence of a valid title in the grantee to the premises therein purported to be conveyed . . . . No act done or omitted relative to the assessment or collection of a tax, including everything connected therewith . . . including the . . . sale of property therefor, shall in any way affect or impair . . . the validity of such sale, unless the person contesting the validity of such sale shows that the collector neglected to provide notice pursuant to section 12-157, to such person or to the predecessors of such person in title, and who had a right to notice of such sale . . . ."

Section 12-159 plainly and unambiguously provides that a person may contest the validity of a tax sale by showing that notice was not properly provided to the plaintiff's predecessor in title in accordance with § 12-157 (a). The statute contemplates situations in which a property owner's predecessor in title has a right to notice of a tax sale and was given inadequate notice of the tax sale. It permits plaintiffs to contest the validity of notice given to a predecessor in title under those circumstances. The statute protects property owners from having a tax sale presumed valid without having proper notice of the tax sale given to, inter alia, the property owner's predecessor in title in cases in which the predecessor in title has a right to notice of the tax sale. In the present case, the plaintiff is within the zone of interests meant to be protected by the statute and, thus, has statutory standing to contest the adequacy of Mercury's notice.

II

The plaintiff next claims that the court erred in determining that the defendants satisfied the notice requirement of § 12-157 (a) as to Mercury. We disagree.

The court concluded that the defendants presented the following unrefuted evidence that they had complied with the requirements of § 12-157 (a). The defendants, via certified mail, mailed to Mercury notice of the tax sale on May 10, 2007, which date was not more than twelve weeks and not less than nine weeks before the tax sale as required by § 12-157 (a). The notice was returned as undeliverable. The defendants performed two Accurint[3] searches to confirm that Mercury's mailing address was accurate. The defendants also attempted to locate Mercury's agent of service through the California secretary of state website and discovered that the agent of service had resigned and a new agent had not been appointed. Additionally, the defendants posted a notice at city hall and published notice in the Hartford Courant. The court concluded that "[s]ubsequent notices to Mercury were clearly not required because they would have been futile. Instead, the defendants sent all other notices required by § 12-157 (a) to Hunt Leibert, Mercury's counsel, complying with the requirements of § 12-157 (a)."

Section 12-157 (a) describes the method for selling a parcel of real estate for taxes and provides in relevant part that "[w]hen a collector levies one or more tax warrants on real estate, he shall prepare notices thereof . . . . [O]ne shall be sent by certified mail, return receipt requested, to the taxpayer and each mortgage[e], lienholder and other record encumbrancer of record whose interest will be affected by the sale. . . .

___

[3] The trial court noted: "Accurint is a search tool that provides investigative tools to government entities, enabling them to locate people, detect fraud, uncover assets and verify identity."

Such . . . mailing shall be done not more than twelve and not less than nine weeks before the time of sale and shall constitute a legal levy of such warrant or warrants upon the real estate referred to in the notice. . . . He shall also send by certified mail, return receipt requested, to the delinquent taxpayer and to each mortgagee, lienholder and other record encumbrancer whose interest in such property will be affected by such sale, a similar notice which shall not be required to list information pertaining to properties in which the person to whom the notice is directed has no interest. The notice shall be sent at least twice . . . ." "The power to sell land for delinquent taxes is strictly construed; the tax collector must substantially, if not strictly, comply with all statutory provisions." (Internal quotation marks omitted.) *Associates Financial Services of America, Inc.* v. *Sorensen*, 46 Conn. App. 721, 726–27, 700 A.2d 107 (1997), appeal dismissed, 245 Conn. 168, 710 A.2d 769 (1998).

"[T]he application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review . . . ." (Citation omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 88, 995 A.2d 1 (2010).

The plaintiff argues that the defendants were required under § 12-157 (a) to mail additional notices to Mercury and that the court erred in excusing the defendants from strictly complying with the notice requirements of § 12-157 (a) on the basis of futility. The plaintiff contends that regardless of whether additional mailings would have been futile, they were obligated to make such mailings in order to comply with the notice requirements of § 12-157 (a). The plaintiff further contends that additional mailings may not have been futile and may have reached Mercury.[4]

---

[4] The plaintiff also argues that, in any event, the court's finding of futility is a factual finding that is inappropriate for summary judgment. The facts supporting the court's determination of futility were undisputed. The court's

We do not agree with the plaintiff's argument that the defendants were required to send the remaining two notices to an unworkable address in order to satisfy § 12-157 (a). Section 12-157 (a) provides that notice of the tax sale be given via certified mail three times to the taxpayer; under the circumstances of this case, a title search would indicate Mercury as the record owner. Contrary to the plaintiff's assertion, it is unlikely that additional notices sent to an unworkable address would have reached Mercury. Rather than send the additional notices to an unworkable address,[5] the defendants took additional steps to provide Mercury with notice. When the defendants were unable to find

determination of whether the undisputed facts satisfied § 12-157 (a) was a question of law. See *Maturo* v. *Maturo*, supra, 296 Conn. 88 (application of statute to particular set of facts is question of law).

[5] It should be noted that the certified letter was returned as "undeliverable" and that there was no forwarding address. This presents a different situation from one in which, for example, a certified letter is simply ignored by the addressee. Cf. *Jones* v. *Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006). Additionally, no evidence was presented to the court to show that further mailings may have provided actual notice to Mercury. Where substantial compliance has been achieved, the lack of discernable prejudice is relevant. See *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 230 Conn. 807, 821–22, 646 A.2d 812 (1994) (mechanic's lien valid against subsequent encumbrancer despite failure strictly to comply with notice requirement of General Statutes § 49-34 where mistake was made in good faith and no prejudice resulted); *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 418, 538 A.2d 219 (1988) (strict compliance with contract notice terms may be excused to avoid forfeiture, as long as there is no prejudice to insurer); *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 376, 955 A.2d 544 ("[l]iteral enforcement of notice provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages" [internal quotation marks omitted]), cert. denied, 289 Conn. 956, 961 A.2d 420 (2008); *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 620–25, 902 A.2d 24 (2006) (statutory lien not invalid where notice sent late under notice requirements of bylaws where delay in notice did not prejudice defendant); but see, e.g., *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 394–96, 618 A.2d 1340 (1993) (no merit to claim that any delay in notice to custodian of second injury fund under General Statutes § 31-349 should be excused because delay did not cause prejudice to fund).

another address for Mercury and were unable to locate an agent of Mercury, the defendants sent the remaining notices to Mercury's attorney. Section 12-157 (a) does not specify that notice be sent to the property subject to the tax sale; rather, it states the persons or entities to which notice must be sent. The defendants, after taking additional steps to locate Mercury and/or Mercury's agent to no avail, sent notice to Mercury through its former attorney of record. Such steps satisfied the requirements of § 12-157 (a).

III

The plaintiff next claims that the court erred in concluding that the defendants took additional reasonable steps as required by due process to notify Mercury of the sale. We disagree.

The plaintiff argues that the additional steps taken by the defendants to contact Mercury, namely, performing Accurint searches to confirm the accuracy of Mercury's mailing address and attempting to locate Mercury's agent of service through the California secretary of state website, did not satisfy due process. He contends that the defendants should have taken one or more of the following steps to locate Mercury in order to satisfy due process: sent the subsequent mailings to Mercury's unworkable California address, mailed notice to Mercury's Oklahoma address as stated on the California secretary of state website, searched the Connecticut secretary of the state's website for a then current address for Mercury, posting notice of sale on the property, mailing notice to the property address addressed to "occupant," and/or verify the occupancy of the property.[6]

---

[6] To the extent that the plaintiff suggests that the city should have taken additional steps to notify him of the tax sale, as opposed to notice to Mercury, that argument is addressed in part IV of this opinion.

In *Jones* v. *Flowers*, 547 U.S. 220, 226–27, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), the Supreme Court stated that "[d]ue process does not require that a property owner receive actual notice before the government may take his property. . . . Rather, we have stated that due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . [T]his Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent. . . . But we have never addressed whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." (Citations omitted; internal quotation marks omitted.) The court determined that when the government becomes aware prior to the taking that notice has failed, "the [s]tate must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Id., 225. The court determined that, under the facts in *Jones*, there were reasonable steps available to the respondent, and, thus, the effort to provide notice was not sufficient to satisfy due process. Id., 235. The court stated that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." Id., 234. The fact that the letter at issue in *Jones* was marked " 'unclaimed' " could have meant that the petitioner was not home when the letter arrived, that the petitioner did not retrieve the letter from the post office, or that he no longer resided at the subject property. Id. The court suggested that one possible reasonable step would be to send the letter so that no signature was required. Id.

In the present case, the letter was not returned marked "unclaimed," but rather "undeliverable." Further, the marking indicated that the post office was

unable to forward the notice. Under those circumstances, additional mailings to the same unworkable address most likely would have been futile. The defendants took additional steps, however. They searched to discover whether Mercury's mailing address was accurate and, upon discovering that the unworkable address was, nonetheless, the apparently correct mailing address, attempted to locate Mercury's agent of service. Upon discovering that Mercury's agent of service had resigned and no new agent had been appointed, the defendants sent all other notices to persons who had been Mercury's attorneys. These additional steps satisfied the due process considerations mandated by *Jones* v. *Flowers*, supra, 547 U.S. 220.

The further additional steps suggested by the plaintiff were not required by due process. As the trial court found, the plaintiff presented "no evidence . . . either in his motion for summary judgment or in opposition to the defendants' motion for summary judgment" to support the argument that the defendants should have taken additional steps to discover his unrecorded interest. Additionally, Mercury, as a mortgage company that purchased the property as an investment property, was presumably not inexperienced, or trying to avoid notice. See *Mennonite Board of Missions* v. *Adams*, 462 U.S. 791, 799, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) ("[i]t is true that particularly extensive efforts to provide notice may often be required when the [s]tate is aware of a party's inexperience or incompetence").

Furthermore, we have determined in part II of this opinion that the defendants complied substantially with the requirements of § 12-157 (a). The defendants substantially complied with the actual notice provisions, and complied with the constructive notice provisions of § 12-157 (a) by posting a notice at city hall and publishing notice in the Hartford Courant. In *Associates Financial Services of America, Inc.* v. *Sorensen*, supra,

46 Conn. App. 728, we determined that the notice requirements of § 12-157 (a) satisfy the due process clause of the fourteenth amendment. In *Associates Financial Services of America, Inc.,* we noted that "[i]n *Mennonite Board of Missions* v. *Adams,* [supra, 462 U.S. 795], the United States Supreme Court held that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotation marks omitted.) *Associates Financial Services of America, Inc.* v. *Sorensen,* supra, 725. We concluded in *Associates Financial Services of America, Inc.,* that the notice requirements of § 12-157 (a) are "reasonably calculated to apprise all interested parties of the tax sale" in accordance with the due process requirements set forth in *Mennonite Board of Missions.* Id., 726. We conclude that the court did not err in concluding that the additional steps taken by the defendants to provide Mercury with notice satisfied due process.

IV

The plaintiff next claims that the court erred in concluding that his own interest in the property was not reasonably ascertainable and thus obviated any obligation of the defendants to have provided him with notice of the tax sale. We disagree.

The plaintiff argued before the trial court that due process required the defendants to do more to ascertain his unrecorded interest in the property than to satisfy the requirements of § 12-157 (a). The court disagreed and concluded that the plaintiff's interest was not reasonably ascertainable and, thus, he was not entitled to

mail notice under § 12-157 (a). Because of his own failure to record his deed, he was not an owner of record and, of course, did not pay taxes. The court noted that the plaintiff received constructive notice of the tax sale via publication in the Hartford Courant and a posting at city hall.

The plaintiff argues that his interest in the property was reasonably ascertainable under *Mennonite Board of Missions* v. *Adams*, supra, 462 U.S. 791, and, accordingly, the defendants were constitutionally bound to mail him notice of the tax sale. He contends that his interest was reasonably ascertainable given his long-standing continuous occupation of the property and knowledge of his name and address by other city agencies and employees who had interacted with the plaintiff while he occupied the property.

The United States Supreme Court has stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). In *Mennonite Board of Missions* v. *Adams*, supra, 462 U.S. 800, the Supreme Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, *if its name and address are reasonably ascertainable.*" (Emphasis added.)

Cases in sister jurisdictions have held that unrecorded interests are not reasonably ascertainable. See *Johnson* v. *Michigan Dept. of Treasury*, United States

Court of Appeals, Docket No. 99-1730, 2000 U.S. App. LEXIS 9660 (6th Cir. May 4, 2000) (no denial of due process where homeowner not notified of tax foreclosure on home because he did not record deed in his name); *Sterling* v. *Block*, 953 F.2d 198, 200 n.2 (5th Cir. 1992) (unrecorded interests not reasonably ascertainable); *Bender* v. *Rochester*, 765 F.2d 7 (2d Cir. 1985) (after balancing burden on city to identify interests with claimant's ability to protect interests, court determined interests of heirs of deceased property owner not reasonably ascertainable where no death certificate or any other notification on land records that owner was deceased); *Sallie* v. *Tax Sale Investors, Inc.*, 998 F. Supp. 612 (D. Md. 1998) (leasehold interest in property not reasonably ascertainable where leasehold interest not recorded on land records).

The plaintiff's unrecorded interest in the property was, then, not reasonably ascertainable. The plaintiff, a sophisticated real estate investor, should have known and had the ability to record his interest. The additional steps proposed by the plaintiff for the defendants to take in order to ascertain the plaintiff's interest in the property exceed the scope of § 12-157 (a). Section 12-157 (a) requires mail notice to be sent to "the taxpayer and each mortgage[e], lienholder and other record encumbrancer of record whose interest will be affected by the sale . . . ." The statute does not require that persons or entities with unrecorded interests be notified, nor does it require a city to search its departments for unrecorded interests. Section 12-157 (a) requires notice only to persons with a recorded interest in the property, and that limitation is consistent with due process. See General Statutes § 12-157 (a). Furthermore, the plaintiff was not entirely without notice because the defendants complied with the constructive notice provisions of § 12-157 (a) and posted a notice at city hall and published notice in the Hartford Courant.

## V

The plaintiff last claims that the "court erred in denying [him] the opportunity to testify in defense of the defendants' motion for summary judgment or by not continuing the matter to allow the plaintiff, then acting pro se, to submit affidavits in the matter in lieu of his proffered in-person testimony." We disagree.

At the hearing on the parties' motions for summary judgment, the then self-represented plaintiff informed the court that he disagreed with the content of the defendants' affidavits and that affidavits are not sufficient for evidence on a motion for summary judgment. The court replied that, according to the rules of practice, affidavits are proper on summary judgment and that if the plaintiff wanted to dispute the content of the defendants' affidavits, he was required to file his own affidavit. The plaintiff stated that he wanted to testify in lieu of an affidavit. The court informed the plaintiff that testimony is not appropriate at hearings on motions for summary judgment.

In his brief to this court, the plaintiff notes that he was unable to find a Connecticut case addressing whether testimony is allowable on a motion for summary judgment. He argues, however, that Practice Book § 11-18 (a) (2)[7] and (b)[8] "suggest that testimony is allowed on

---

[7] Practice Book § 11-18 (a) provides in relevant part: "Oral argument is at the discretion of the judicial authority except as to motions to dismiss, motions to strike, motions for summary judgment, motions for judgment of foreclosure, and motions for judgment on the report of an attorney trial referee and/or hearing on any objections thereto. For those motions, oral argument shall be a matter of right provided . . .

"(2) a nonmoving party files and serves on all other parties . . . a written notice stating the party's intention to argue the motion or present testimony. . . ."

[8] Practice Book § 11-18 (b) provides: "As to any motion for which oral argument is of right and as to any other motion for which the judicial authority grants or, in its own discretion, requires argument or testimony, the date for argument or testimony shall be set by the judge to whom the motion is assigned."

any motion filed with the court." Section 11-18 sets forth the proper procedure for, inter alia, requesting oral argument or testimony with respect to various motions in civil matters. This section does not state or indicate that oral testimony is permitted or required on a motion for summary judgment; rather, it provides the procedure for requesting oral argument or testimony on motions on which either or both is appropriate.

Practice Book § 17-45, which directly addresses motions for summary judgment, provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . Any adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. . . ." This section indicates that only documentary evidence is appropriate to support a motion for summary judgment. It states that the motion shall be supported by "documents" and provides a nonexhaustive list of documentary evidence. The catchall phrase, "and the like," indicates that the additional permissible evidence must be similar to affidavits, certified transcripts of testimony under oath, disclosures, and/or written admissions—all of which are documentary evidence.

Additionally, our well settled standard of review of trial court rulings on motions for summary judgment references only documentary evidence in support of motions for summary judgment. See, e.g., *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 46–47, 881 A.2d 194 (2005) ("[w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue"

[internal quotation marks omitted]); *Little* v. *Yale University*, 92 Conn. App. 232, 235, 884 A.2d 427 (2005) ("[i]f the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment" [internal quotation marks omitted]), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006); *Mozeleski* v. *Thomas*, 76 Conn. App. 287, 290, 818 A.2d 893 ("[w]hen a party files a motion for summary judgment and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof" [internal quotation marks omitted]), cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003); *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 663, 691 A.2d 1107 (1997) ("[t]o oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents" [internal quotation marks omitted]). We conclude that the court did not err in not permitting the plaintiff to testify in support of his motion for summary judgment.

The plaintiff also argues that the court erred in failing to continue the matter to allow him to submit affidavits. The plaintiff did not ask for a continuance during oral argument on the motion for summary judgment. "Our Supreme Court expressly has declined to impose on the trial courts the duty to order a continuance sua sponte. See *State* v. *Barrett*, 205 Conn. 437, 455, 534 A.2d 219 (1987)." *Pasiakos* v. *BJ's Wholesale Club, Inc.*, 93 Conn. App. 641, 645, 889 A.2d 916, cert. denied, 277 Conn. 929, 896 A.2d 101 (2006). Accordingly, the court did not abuse its discretion in failing to sua sponte order a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.