# E AND M CUSTOM HOMES, LLC *v.* ALBERTO NEGRON ET AL.
## (AC 33339)

DiPentima, C. J., and Robinson and Bishop, Js.

Argued September 24, 2012—officially released January 1, 2013

*Robert E. Ghent,* for the appellant (plaintiff).

*Raphael Deutsch,* with whom, on the brief, was *Raymond J. Antonacci,* for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, E & M Custom Homes, LLC, appeals from the judgment of the trial court finding for the defendants Alberto Negron and Luz Maria Negron on the plaintiff's claim for foreclosure of its mechanic's lien and finding against the plaintiff on the defendants' counterclaim.[1] On appeal, the plaintiff claims that the court improperly (1) awarded damages to the defendants on their counterclaim, (2) calculated the mechanic's lien, (3) permitted an unregistered home improvement contractor to testify as an expert witness and (4) calculated the setoff. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to this appeal. Ed Thomas, a principal of the plaintiff, and the defendants entered into two contracts: (1) for the purchase of an unimproved lot located at Lot 16, 27 Red Maple Lane, Waterbury for $69,900 (lot agreement); and (2) for the construction of a single family residence on the lot for a purchase price of $230,000 (construction contract). Upon execution of the lot agreement, the defendants gave the plaintiff a $6000 deposit.

---

[1] CitiMortgage, Inc., as a substituted party defendant for the original mortgagee, MERS, as Nominee for Provident Funding Associates, L.P., is also a defendant in the underlying action, but is not a party to this appeal. We therefore refer in this opinion to Alberto Negron and Luz Maria Negron as the defendants.

The defendants subsequently obtained construction loan financing with the assistance of Allied Home Mortgage Corporation (Allied). Thomas was the manager of Allied. Through its employee, Helen Mezzanotte, Allied prepared a budget for the construction of the new dwelling. Thomas reviewed and approved the construction budget on behalf of the plaintiff.

Owner Builder Loan Services (lender) provided the construction loan in the amount of $256,600. The construction loan agreement included a construction budget, which provided for draws to be made in five separate stages of construction. The construction budget set forth and detailed the work to be performed and the requirements that had to be met before the release of a draw. One requirement was the execution of a contractor's affidavit, which the lender prepared and directed how it was to be executed and returned. Both Alberto Negron and Thomas, on behalf of the plaintiff, signed the construction budget. The construction budget calculated the cost to complete the construction of the house to be $191,749.

Six months after the contracts were signed, on March 12, 2007, the closing for the home and lot occurred. At the closing, the plaintiff received $62,150 out of the construction loan proceeds toward the balance on the lot agreement. Shortly thereafter, it received the maximum disbursements for stages one and two of the construction. The house, however, was not completed at the time of the closing. On August 22, 2007, Alberto Negron and Thomas, on behalf of the plaintiff, executed a contractor's affidavit, which affirmed that work was performed and paid for up through stage four. The next day, the plaintiff received a check for the maximum disbursements for stages three and four.

The construction budget for stage five was $45,428. By October, 2007, the plaintiff had been paid $19,425

for stage five construction work, and the defendants had been reimbursed $12,278 for fixtures, countertops and cabinets that they had purchased, but several items remained incomplete. Nevertheless, the defendants moved into the house prior to a final certificate of occupancy being issued. The house failed its first two inspections in November, 2007. A certificate of occupancy was issued on December 31, 2007.

On February 16, 2008, pursuant to General Statutes § 49-33, the plaintiff filed a timely mechanic's lien with respect to services rendered in the development of the property. It claimed $70,000 for services rendered from July 1, 2007 through November 16, 2007. The plaintiff then filed a two count complaint, seeking foreclosure on the mechanic's lien and damages for breach of contract, on November 26, 2008. The defendants filed an answer and counterclaim on January 21, 2009, and an amended counterclaim on December 11, 2009, alleging that the plaintiff breached its contract with the defendants, that it failed to comply with General Statutes § 20-417c (4), (6) and (7) of the New Home Construction Contractors Act, General § 20-417a et seq., and that the violation of those provisions was a per se violation of General Statutes § 42-110a (b)[2] of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On August 24, 2010, the plaintiff amended its complaint, withdrawing the second count,

[2] General Statutes § 20-417c provides in relevant part: "The commissioner may revoke, suspend, or refuse to issue or renew any certificate issued pursuant to sections 20-417a to 20-417j, inclusive, or place a registrant on probation or issue a letter of reprimand after notice and hearing in accordance with the provisions of chapter 54 concerning contested cases if it is shown that the holder of such certificate has . . . (4) engaged in any untruthful or misleading advertising . . . (6) engaged in an unfair or deceptive business practice under subsection (a) of section 42-110b; [or] (7) failed to timely complete any task, as specified in a written contract of sale . . . ."

General Statutes § 20-417g provides: "A violation of sections 20-417a to 20-417j, inclusive, shall be determined an unfair or deceptive trade practice under subsection (a) of 42-110b."

which had alleged breach of contract, because the defendants had been granted a discharge of their debts.[3]

A court trial was held over four days from August 18 to August 24, 2010. Posttrial briefs were filed on September 10, 2010, October 12, 2010, and October 18, 2010. The court issued its memorandum of decision on December 15, 2010. It found for the defendants on the plaintiff's mechanic's lien claim; for the plaintiff on the defendants' § 20-417c (4) counterclaim; for the defendants on their § 20-417c (6) counterclaim, awarding $25,234.73 plus attorney's fees and costs; and for the defendants on their § 20-417c (7) counterclaim, awarding $10,000 in damages.

In its memorandum of decision on the plaintiff's motion for reconsideration, filed March 17, 2011, the court opened the judgment and reduced it by $1900, entering judgment for the defendants in the amount of $23,334.73 for the violation of § 20-417c (6). On March 18, 2011, the court awarded $10,450 in attorney's fees. This appeal followed. Additional relevant facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly awarded damages to the defendants on their counterclaim when it failed to deduct the cost of completion from the balance due on the construction contract. The bankruptcy, the plaintiff argues, discharged only the defendants' personal liability on the contract claim. The construction contract remained valid, albeit unenforceable. Relying on *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 961 A.2d 373 (2009), the plaintiff contends that the calculation of its damages should have been based on the unpaid balance on the construction contract.

---

[3] The defendants filed for bankruptcy on July 31, 2009. They were granted a discharge of their debts on October 28, 2009.

Accordingly, it maintains that because the amount due under the construction contract exceeds the amount of damages that the defendants have proven, they have not suffered an ascertainable loss under CUTPA and should not receive damages because it would be a windfall. We are not persuaded.

The following additional facts and procedural history are relevant to this claim. In its December 15, 2010 memorandum of decision, the court considered the defendants' counterclaim that the plaintiff had violated § 20-417c (4), (6) and (7).[4] As to the § 20-417c (6) counterclaim, the court found that the plaintiff's actions constituted a "conscious and reckless disregard by the plaintiff for both the condition of this dwelling and for the [defendants'] safety." It found that the plaintiff, through Thomas, had misrepresented its qualifications and abilities to properly construct a new home and that the plaintiff never offered to nor did it complete repairs for the "multitude of problems in this travesty of a house after its construction." The court further found that Thomas' refusal to provide an accounting for expenditures and potential overages was egregious and that he exhibited no remorse for "the disaster of a home the plaintiff left for the defendants, nor any concern as to the safety issues that were left at the house." In addition, the court found that the defendants had proven an ascertainable loss through a video of "the catastrophic nature of the house" and expert witness testimony as to the loss suffered and costs to repair and finish the house. Consequently, the court found that the plaintiff had violated § 20-417c (6), which is a per se violation of CUTPA. The court calculated the

---

[4] The court also considered whether the plaintiff had violated the New Home Warranties Act, General Statutes § 47-116 et seq., and whether such a violation is a violation of CUTPA. The court concluded that the defendants had raised this argument for the first time in their posttrial briefs and, therefore, declined to consider it as it would be highly prejudicial to the plaintiff. The plaintiff did not challenge that decision on appeal.

cost of completion to be $33,975 and the value of the mechanic's lien to be $8704.27. Accordingly, the court awarded the defendants $25,234.73 plus attorney's fees and costs.[5]

We begin by setting forth the appropriate standard of review. "To the extent that the [plaintiff] is challenging the trial court's interpretation of CUTPA, our review is plenary. . . . [W]e review the trial court's factual findings under a clearly erroneous standard. . . . Appellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported." (Internal quotation marks omitted.) *Cohen* v. *Roll-A-Cover, LLC*, 131 Conn. App. 443, 463–64, 27 A.3d 1, cert. denied, 303 Conn. 915, 33 A.3d 739 (2011).

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation. . . . An ascertainable loss is a loss that is capable of being discovered, observed or established. . . . The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury. . . . To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations

---

[5] The court also held that the defendants did not offer sufficient evidence at trial that the plaintiff had engaged in untruthful or misleading advertising pursuant to § 20-417c (4) and that the defendants should receive an award of $10,000 in damages for the plaintiff's violation of § 20-417c (7). The plaintiff did not appeal from these decisions.

omitted; internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 217–18, 947 A.2d 320 (2008).

"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Once a violation of the act has been established . . . our cases make clear that the homeowners still must prove that they have suffered an injury or actual loss in order to recover damages under CUTPA." (Citation omitted; internal quotation marks omitted.) *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 181, 995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167 (2010).

Contrary to the plaintiff's position, the determination of whether a party has suffered an ascertainable loss is not based on whether the party can recover damages for a loss, but rather on establishing whether a loss has occurred. Indeed, the term loss has a broader meaning than the term damages. See *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, supra, 287 Conn. 218. The court concluded, based on ample evidence adduced at trial, that the defendants suffered a loss as a result of the actions of the plaintiff. In fact, the plaintiff conceded that certain tasks had not been completed and that the defendants should receive a credit for those incomplete jobs. Thus, the defendants received something less than what they bargained for and, accordingly, have suffered a loss.

Moreover, *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 1, is inapposite. At issue in *Hees* was whether, in a breach of contract action, the court properly accepted a referee's report that used an improper method to calculate damages and whether a violation

of General Statutes § 20-429 (a)[6] precluded a reduction in the plaintiffs' damages by an amount equal to the unpaid balance on the contract. Id., 6–7.[7] Our Supreme Court, in concluding that the referee improperly failed to reduce the plaintiffs' damages by the unpaid balance remaining on the contract, agreed with the defendant that "under traditional contract damages law, the appropriate measure of damages in a construction contract case is the plaintiffs' reasonable cost to complete or repair the work, less the unpaid balance on the contract" and that § 20-249 (a) did not alter this principle of contract damages law. Id., 6.

The present case, however, does not involve a contract or traditional contract damages law. Rather, this case concerns a foreclosure on a mechanic's lien and a counterclaim seeking damages for a statutory violation. Additionally, *Hees* is factually distinguishable because the contract that the plaintiff seeks to have considered was discharged in bankruptcy, and Thomas, on behalf of the plaintiff, signed a construction budget acknowledging that the construction of the house could be completed for $191,749, an amount substantially different from the $230,000 construction contract price. No such facts were present in *Hees*.

---

[6] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[7] In *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 3, there was a counterclaim seeking foreclosure of the defendant's mechanic's lien. The defendant, however, did not appeal the portion of the court's decision that accepted the referee's recommendation against awarding the defendant recovery on that counterclaim. Id., 3–5.

Because *Hees* is not applicable to the defendants' counterclaim and there is sufficient evidence in the record to support the court's decision, we conclude that the court's finding that the defendants suffered an ascertainable loss was not clearly erroneous.

## II

Next, the plaintiff claims that the court improperly calculated the amount of the mechanic's lien because it improperly (1) referred to the construction loan budget rather than the construction contract and (2) interpreted the contractor's affidavit.[8] We disagree with both contentions.

## A

With respect to the plaintiff's argument that the court improperly used the construction loan budget to calculate the mechanic's lien rather than the construction contract, the plaintiff argues that the value of a mechanic's lien under § 49-33 is determined by applying the rule of damages under the doctrine of substantial performance.[9] We are not persuaded.

---

[8] The plaintiff also claims that the court improperly failed to consider claims for work outside the dates set forth in the mechanic's lien. It has, however, failed to adequately brief that claim. "We are not obligated to consider issues that are not adequately briefed. . . . [M]ere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 136 Conn. App. 405, 411–12, 46 A.3d 937 (2012). Though stating that the court erred, the plaintiff has failed to assert how the court's ruling was erroneous or to provide any legal analysis. Accordingly, we decline to review the court's decision on that issue.

[9] The plaintiff also argues that the court made factual errors. Specifically, it maintains that there was substantial performance, as was evidenced by the issuance of the certificate of occupancy, and that the intentional departure from the contract does not necessarily lead to the conclusion that there was a wilful breach. Finally, the plaintiff argues that the failure of the court to award damages with reference to the contract price put the defendants in a better position than if the contract had been performed.

The following additional facts are necessary to resolve this claim. The plaintiff conceded that it had failed to complete certain aspects of the construction work as was required under the contract, including purchasing appliances, completing the landscaping, painting the front door or front porch posts, installing a handrail, installing a piece of wood to support the rear deck, installing an intercom system, installing a strip of asphalt along the driveway, installing brick veneer on the front porch and energizing the air conditioning compressor. The cost of those credits amounted to $6630. The court additionally found that the following work needed to be completed: staining and refinishing the staircase in the entry hall, fixing the toilets so the shower doors do not hit them, fixing the molding issue around several interior doors, fixing the improperly hung kitchen cabinets, repairing the drywall in the foyer, repairing the tiling and ceiling in the kitchen, repairing the tiling in the bathroom, pushing back the cement stairs, fixing the rear deck, leveling the property and removing debris, and fixing the drainage system. The defendants' expert witness testified that the cost of completion to fix and repair the defects was $33,975. The court later reduced this amount by $1900 to correct a calculation error, bringing the cost of completion to $32,075. Based on Thomas' response to the court's inquiry regarding the basis for the plaintiff's claim that the construction contract represented the value of the mechanic's lien, it further found that the difference between the construction contract and the construction budget represented a profit to the plaintiff.

We first set forth the applicable standard of review. "[T]he application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review . . . ." (Internal quotation marks omitted.) *Cornelius* v. *Rosario*, 138 Conn. App. 1, 11, 51 A.3d 1144 (2012).

The mechanic's lien statute, § 49-33 (a), provides in relevant part: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved . . . the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim."

"[U]nder well established precedent, [t]he purpose of the [mechanic's lien] statute is to give a contractor security for labor and material. . . . If the materials are not furnished, and the work is not done, in the construction, raising, removal or repairs of a building, there can be no lien." (Internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 806, 17 A.3d 40 (2011). "Prior precedent from [our Supreme Court has] concluded that the statute was not intended to provide a security interest for a builder's expectation of profit or other contract measure of damages." *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 184–85, 942 A.2d 1028 (2008).

"[I]n a foreclosure of a mechanic's lien, a contractor is entitled to the value of the materials that it furnished or the services that it rendered in the construction of a project." *Intercity Development, LLC* v. *Andrade*, 96 Conn. App 608, 613, 901 A.2d 731 (2006), rev'd in part on other grounds, 286 Conn. 177, 942 A.2d 1028 (2008). Contrary to the plaintiff's assertion, however, the substantial performance doctrine is not the only method available for ascertaining that value. The reasonable

value of the materials and services can be proven by: (1) providing evidence that the contract price represents the value of a contractor's materials and services; *Dreambuilders Construction, Inc.* v. *Diamond,* 121 Conn. App. 554, 562, 997 A.2d 553 (2010); (2) demonstrating the contractor substantially performed such that the contract is the proper valuation of its materials and services; *M. J. Daly & Sons, Inc.* v. *New Haven Hotel Co.,* 91 Conn. 280, 286–87, 99 A. 853 (1917); see also *Intercity Development, LLC* v. *Andrade,* supra, 96 Conn. App. 614 ("[w]ithout a finding that the plaintiff substantially performed its contract, there can be no right to recover under the mechanic's lien statute with reference to the contract price"); or (3) submitting evidence of the cost to complete the work; see *FCM Group, Inc.* v. *Miller,* supra, 300 Conn. 802–805.

In the present case, the plaintiff did not provide evidence that the contract price represented the value of its materials and services. The construction budget, signed by Thomas, on behalf of the plaintiff, states that the house could be constructed at the cost of $191,749. Though the plaintiff asserted that the value of its materials and services corresponded to the construction contract price, it submitted no evidence of how the approximately $40,000 difference between the construction budget and construction contract would be used in the construction of the house. In fact, when the court questioned Thomas about the extra money, he testified that he never contacted the lender to alert it that the house would cost more to build and that he was not sure how the money would be used. Thus, the evidence supports the court's conclusion that the balance due on the contract was profit, not the value of the plaintiff's materials and services.

The evidence also supports the court's conclusion that the plaintiff did not substantially perform in completing the house. The plaintiff conceded that the defendants were entitled to credits totaling over $6600 for

its failure to complete certain items under the contract, and the defendants' expert witness testified that it would cost more than $33,000 to correct the deficiencies. The video of the house provided visual corroboration of the defects, which the court noted spoke "volumes as to the current serious defects present at the house." Given the evidence, the court's conclusion that the plaintiff had not substantially performed and completed the construction of the house was not improper.

Finally, the evidence supports the court's finding that the construction budget represented the value of materials furnished and services rendered under the mechanic's lien. The plaintiff completed the work under the first four stages of the budget and received payment for those stages. As noted previously, Thomas never alerted the lender that it would cost more than $191,000 to construct the house, nor did he know how the extra money would be used in the construction. Accordingly, the court properly concluded that the value of the plaintiff's materials furnished and services rendered should be based on the construction budget.

B

The plaintiff also claims that the court improperly interpreted the contractor's affidavit as a waiver of its rights to enforce the moneys due under the first four stages of the construction budget. He argues that the affidavit did not limit the amount due under the lien, but merely attested to the fact that the amounts from the construction loan had been disbursed and that the subcontractors had been paid. We are not persuaded.

Alberto Negron, through Allied, applied for a construction loan on November 16, 2006. He received the construction loan on March 12, 2007, the same day as the closing for the house and the lot. One of the

documents that he signed on that day was a construction budget. The construction budget required that before the release of draws for stages 2, 3, 4 and 5 could be made, the defendants must provide the lender with a signed "[c]ontractor's [a]ffidavit [f]orm, which was supplied by [the lender] at your construction loan closing. The affidavit is verification that the work done to date has been paid in full." Thomas also signed a copy of the construction budget.

Alberto Negron and Thomas, on behalf of the plaintiff, signed a contractor's affidavit on August 22, 2007. Section (b) of the affidavit states: "General Contractor, Sub Contractors and Suppliers have been paid in full for all amounts owing to it for work performed and materials supplied for all Laborers who have performed work on the Project under the Construction Project for Stages (circle all that apply) 1, 2, 3, 4." All four numbers are circled. Section (c) states: "Except for the unpaid amounts specifically listed above, all invoices, bills and other amounts incurred in construction and/or repair with respect to the Project through the stage circled above (b) have been paid in full and there are no construction liens or other similar liens against the Project and no claims for labor, services, or materials currently remain unpaid." No amounts were listed in section (b) as unpaid. Section (d) provides in relevant part: "The General Contractor hereby waives and releases and forever quit claims to the Owner, all of its rights to claim a construction lien or any other lien or encumbrances for materials furnished and work or labor performed on the Project up to an including the Stage circled (b) above."

The court found that the parties intended to "have the . . . [c]ontractor's [a]ffidavit waiver cover the specific stages of work for which the plaintiff had performed . . . ." Accordingly, the court interpreted the contractor's affidavit as an affirmation that stages one

through four of construction had been paid, and concluded that the calculation of the mechanic's lien for amounts owed for labor and materials should be based solely on the costs associated with stage five of the construction budget.

"Whether a party has waived a right to assert a mechanic's lien is a question of fact to be determined by the trial court. . . . Accordingly, the court's determination in this regard will be upset only if the record demonstrates that it was clearly erroneous. . . . Where, however, there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . .

"Well established principles guide our analysis in determining whether the language of a contract is ambiguous. [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . In contrast, [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 110–11, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696 (2007).

"If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . [When] the language of the contract is clear and unambiguous, the contract is to be given

effect according to its terms. . . . [T]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. . . . A contract should be construed so as to give full meaning and effect to all of its provisions . . . ." (Citation omitted; internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, supra, 300 Conn. 811.

Contrary to the plaintiff's argument, the contractor's affidavit did not merely attest that the construction loan disbursements had been made and that the subcontractors had been paid. The clear and unambiguous language of the contractor's affidavit stated: "General Contractor hereby waives and releases and forever quit claims to the Owner, all of its rights to claim a construction lien or any other lien or encumbrances for materials furnished and work or labor performed on the Project up to an including the Stage circled (b) above." Stages one through four were circled; therefore, the plaintiff waived its claim to any funds due for those stages. Accordingly, it was not clearly erroneous for the court to conclude that the plaintiff had waived its right to a lien waiver for the first four stages of construction and that the mechanic's lien would be based on stage five of the construction budget alone.

### III

The plaintiff next claims that allowing an unregistered home improvement contractor to offer expert witness testimony was an abuse of discretion. It maintains that because the witness engaged in the home improvement business in Connecticut without registering with the department of consumer protection, a violation of Connecticut law, he was not qualified to be an expert witness. We disagree.

The following additional facts are necessary to dispose of this claim. At trial, the defendants called Joseph

D'Averso as an expert witness to testify about the repairs needed at the property. He indicated that he was a general contractor with nearly forty years of experience in the field and that he had completed approximately six new home constructions. Upon further voir dire by the plaintiff's counsel, D'Averso testified that he did not have a home improvement contractor's license, major contractor's license or certificate of registration as a new home construction contractor. The defendants' counsel and the court also elicited testimony concerning his experience in the areas of plumbing, electrical work, roofing, landscaping, deck construction and renovations, cement stair relocation, cabinetry work, toilet relocation and tile work, as well as his educational background. On the basis of his testimony, the court accepted D'Averso as an expert witness.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . It is well settled that [t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world,

which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue. . . . Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue." (Internal quotation marks omitted.) *Milton* v. *Robinson*, 131 Conn. App. 760, 772–73, 27 A.3d 480 (2011), cert. denied, 304 Conn. 906, 39 A.3d 1118 (2012).

In the present case, the defendants' counsel and the court elicited extensive information regarding D'Averso's qualifications to provide an estimate of the cost of repairs to the defendants' home. Whether D'Averso legally could complete the work that was estimated was not at issue and is not a factor in whether he reasonably could be qualified as an expert. The court determined that D'Averso's prior experience regarding the issues with the defendants' home gave him peculiar knowledge that would aid the court in determining the questions at issue. See id., 773. Accordingly, the court did not abuse its discretion in allowing D'Averso to be qualified as an expert witness.

## IV

Finally, the plaintiff claims that the court abused its discretion when it did not order a setoff against the balance due on the construction contract.[10] It asserts that the value of the materials furnished and services rendered under a mechanic's lien is determined by deducting the cost of completion from the balance due on the contract. We disagree.

We first set forth our standard of review for a claim of this nature. "In Connecticut, a setoff may be legal

---

[10] The plaintiff also notes that the defendants did not affirmatively plead setoff pursuant to Practice Book § 10-54, but apparently does not challenge the court's finding that it could apply a setoff on an equitable claim even where a party failed to affirmatively plead setoff. Accordingly, we will not address this issue.

or equitable in nature. . . . When the statutes governing legal setoff do not apply, a party may be entitled to equitable setoff, nonetheless, only to enforce the simple but clear natural equity in a given case." (Internal quotation marks omitted.) *Croall* v. *Kohler*, 106 Conn. App. 788, 791, 943 A.2d 1112 (2008). "We will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . . An equitable award may be found to be error only if it is based on factual findings that are clearly erroneous . . . ." (Citations omitted; internal quotation marks omitted.) Id., 791–92.

As we noted in part II, the court's determination that the construction budget, not the construction contract, represented the value for the materials furnished and services rendered under the mechanic's lien was not improper, and its interpretation that the contractor's affidavit constituted a partial waiver that limited the plaintiff's claim to stage five of the construction budget was not clearly erroneous. Accordingly, it was not clearly erroneous for the court to use the construction budget as the starting value for the mechanic's lien when it calculated the setoff.

The judgment is affirmed.

In this opinion the other judges concurred.