LARRY PETTIT ET AL. *v.* HAMPTON AND
BEECH, INC., ET AL.
(AC 27156)

Harper, Lavine and Dupont, Js.

Argued December 7, 2006—officially released June 5, 2007

*John H. Parks*, for the appellants (plaintiffs).

*Paul W. Smith*, for the appellees (defendants).

*Opinion*

LAVINE, J. The facts underlying this appeal concern the construction and sale of a new home. The plaintiffs, Larry Pettit and Bonnie Pettit, appeal from the judgment for money damages rendered in their favor, which they claim to be insufficient, following a trial to the court. The plaintiffs have raised nine claims on appeal, which we have grouped for purposes of analysis. The plaintiffs

claim that the court (1) applied the wrong standard to determine whether there was substantial compliance with the contract, (2) improperly refused to apply General Statutes § 20-417a et seq., the New Home Construction Contractors Act (act), (3) abused its discretion in permitting the defendants' expert witness to testify and (4) made erroneous findings of fact and failed to resolve allegations pleaded. We affirm the judgment of the trial court.

The plaintiffs commenced this action against the defendant David J. Frederick for damages they allegedly sustained in connection with the construction and sale of a new, single-family home at 9 Charnley Road, Enfield. The plaintiffs and Frederick were the signatories to the contract, but subsequent to the initiation of litigation, Frederick assigned the contract to the corporate defendant, Hampton and Beech, Inc. The parties stipulated that the assignment would not affect any liability the defendants might have.

The court found that the plaintiffs responded to a real estate advertisement for a house to be built similar to one depicted in the advertisement. On February 29, 2000, Frederick and the plaintiffs entered into an agreement. Later, the plaintiffs changed some of the plans, and a second contract was signed in March, 2000. The contract price was $242,455, and the date for closing title was July 30, 2000. The contract did not contain a clause stating that time is of the essence. The contract required the plaintiffs to sign the blueprints provided by Frederick. Rather than purchase a new set of blueprints, Frederick copied a set that was on file in the Enfield building department and modified it by hand to reflect the changes the plaintiffs wanted. The plaintiffs wanted their home to be a mirror, or reverse, image of the house depicted in the advertisement. They also modified the plans by widening the combination kitchen and great room and extending the rear of the house. The court

found, pursuant to expert testimony, that reading and comprehending the blueprints provided by Frederick were difficult for the framers and probably led to some of the shortcomings in the construction process.

The plaintiffs had a contract to sell their former home and became concerned that their new house would not be ready by July 30, 2000. They extended the closing date on their former home to August 10, 2000, and moved into a motel, where they stayed until October, 2000. On July 31, 2000, one day after the date the contract called for closing, Frederick obtained a certificate of occupancy for the new home. The plaintiffs, however, refused to set a new closing date. Although they still wanted to purchase the house, the plaintiffs commenced this action on August 12, 2000.[1] On August 21, 2000, the plaintiffs presented Frederick with a punch list of work to be completed, which Frederick attempted to resolve, but the lawsuit made a working relationship difficult. Counsel for the parties negotiated a closing date of October 7, 2000, and an escrow of $20,000 for completion of the punch list. Following trial, the court rendered judgment in favor of the plaintiffs on counts one and three of their complaint and on the counterclaim Frederick had filed and awarded the plaintiffs $14,152.34 in damages and attorney's fees,[2] as provided by the contract, to be satisfied by the escrow.[3]

---

[1] The complaint sounded in three counts: count one alleged damages for negligent or fraudulent misrepresentations, breach of contract, breach of express or implied warranties, unworkmanlike construction, construction in violation of the building code and failure to register as a home improvement contractor pursuant to General Statutes § 20-418 et seq.; count two alleged a violation of the Connecticut Unfair Trade Practices Act; see General Statutes § 42-110a et seq.; and count three alleged that the corporate defendant is the alter ego of Frederick. In a counterclaim, Frederick alleged that he had performed fully and was entitled to the $20,000 escrow.

[2] The court awarded the plaintiffs $8000 in attorney's fees and found that the plaintiffs contributed to the high attorney's fees by delaying the closing after the certificate of occupancy was obtained and immediately bringing a lawsuit.

[3] In the counterclaim, Frederick alleged to have performed the contract fully and sought the $20,000 that had been placed in escrow at the time of

I

The plaintiffs' first claim is that the court applied an improper standard to determine whether Frederick was in substantial compliance with the terms of the contract. The plaintiffs contend that the court based its decision on the building code, rather than on the specifications called for in the blueprints, which were incorporated by reference into the contract. We disagree.

The plaintiffs' amended complaint alleged breach of contract and unworkmanlike performance but based its claim for damages on a failure to comply substantially with the contract. "The determination of [w]hether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine. . . . [Our Supreme Court has] long held that a finding of fact is reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Pisani Construction, Inc.* v. *Krueger*, 68 Conn. App. 361, 364, 791 A.2d 634 (2002). "The analysis necessarily involves an inquiry into the totality of facts and circumstances surrounding the performance of the contract. See 2 E. Farnsworth, Contracts § 8.12." *Miller* v. *Bourgoin*, 28 Conn. App. 491, 496, 613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825 (1992).

The court made the following findings with respect to the plaintiffs' allegations that, as constructed, the

closing. After the judgment and attorney's fees were paid to the plaintiffs from the escrow, the court awarded the defendants the balance of the escrow.

home did not constitute substantial compliance with the contract. There were surface cracks in the concrete front porch because expansion joints were not installed, and the front steps, which were built to industry standards, had settled. On the basis of expert testimony, the court found that the porch could be repaired by resurfacing it and that the gap between the steps and the porch was a minor repair. The court awarded $3238 to repair both problems. There were cracks in the foundation, which are not uncommon postconstruction, and could be repaired for $700. Although the blueprint called for a two inch by twelve inch support beam to be built into the foundation, Frederick used an alternate construction that provided better structural support and complied with the building code. The court awarded $105 to attach a joist to an existing one to add additional support, although it might not be necessary structurally. The court found that a beam needed to be installed under the kitchen and awarded $250 for repair. Joint hangers were missing on the header and stringers of the stairway to the basement. Their omission was not a structural defect, and they easily could be installed at a cost of $75. Bridging and blocking were omitted or not nailed where ducts and pipes passed through joists, another nonstructural defect, and could be remedied at a cost of $60. Settlement cracks in the walls, a common postconstruction phenomena, could be repaired for $1265. The court also awarded the plaintiffs $219.34 to replace a window over the garage. In making its findings, the court cited the testimony of the plaintiffs' expert witness, Robert W. Bounds, and also relied on the testimony of Frederick and the defendants' expert witness, Jimmy W. Hodrinsky, and the building code.[4]

---

[4] The court failed to award the plaintiffs damages for various claims of breach of contract. The court concluded that the plaintiffs failed to meet their burden of proving that Frederick had buried tree stumps on the property. The defective floor, which the plaintiffs insisted be installed without delay, was replaced, and the contract provided an allowance for the floor. The plaintiffs

"Although the issuance of a certificate of occupancy may be evidence of substantial performance, it is not dispositive of the question. . . . Other factors to be considered include the extent to which the injured party will be deprived of the benefit reasonably expected, the extent to which that party can be adequately compensated for the deficiency of performance, the extent to which the performing party will suffer forfeiture, the likelihood that the performing party will cure his failure in light of the circumstances and his reasonable assurances, and the extent of good faith and fair dealing on the part of the performing party." (Citation omitted.) Id.; see also *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 59–60, 829 A.2d 102 (2003), citing 2 Restatement (Second), Contracts § 241 (1981).

"There is no reason why one who has substantially performed . . . a [building] contract, but unintentionally failed of strict performance in the matter of minor details, should have imposed upon him as a condition of recovery for that of which the other party has received the benefit, the burden of showing by direct evidence its reasonable value, or why he should be deprived of all benefit of the contract which he has substantially performed." (Internal quotation marks omitted.) *Edens* v. *Kole Construction Co.*, 188 Conn. 489, 494, 450 A.2d 1161 (1982).

failed to substantiate various defects with the interior or the cost of remediation. They also failed to prove that double joists were necessary under partitions. They offered no evidence of the cost to install missing anchor bolts, which, according to Frederick, serves no purpose after a house is built. Frederick installed footing drains to the street, rather than leader drains.

The court also found that although Frederick failed to construct some portions of the house according to the blueprint, the house was constructed in conformity with the building code. "The blueprint calls for double joists under partitions. The purpose is for added support under partition walls. While that was not done by [Frederick] for added support, the joists were in fact twelve inches on center instead of sixteen inches on center. The joists as installed did satisfy the building code, and according to the plaintiffs' expert, Mr. Bounds, had sufficient load bearing capacity."

On the basis of our review of the court's memorandum of decision, we conclude that the court's finding that the defendants were in substantial compliance with the contract was not clearly erroneous. The court found that there were some deficiencies in Frederick's performance, but that they could be remedied for "approximately $5000, which is less than 5 percent of the amount sought." For these reasons, the plaintiffs cannot prevail on their claim for damages in excess of those found to be due by the court.

II

The plaintiffs' second claim is that the court improperly refused to apply § 20-417a et seq., an act concerning new home construction contractors, to the evidence and erroneously awarded the defendants the balance of the escrow. In their brief, the plaintiffs also claim that the court improperly failed to find that Frederick had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a,[5] as alleged in count two. The plaintiffs' claims are without merit.

At paragraph twenty-two of their amended complaint, the plaintiffs alleged in relevant part: "Pursuant to a Motion for Order filed by the Plaintiffs herein, an agreement between the parties was signed on October 2, 2000, which agreement provided . . . (c) Assignment by the Defendant Frederick, which will not avoid liability under [General Statutes] §§ 47-116 et [seq.][6] and 20-418 et seq."[7] In their brief to this court, the plaintiffs contend that Frederick was engaged in the business of

---

[5] In count two of their amended complaint, the plaintiffs alleged that the defendants' business practices violated CUTPA.

[6] General Statutes § 47-116 et seq. is an act concerning new home warranties.

[7] General Statutes § 20-418 et seq. is an act concerning home improvement contractors. We note that throughout their oral argument before this court, the plaintiffs used the terms new home contractor and home improvement contractor interchangeably.

new home construction and had held himself out as a new home construction contractor with respect to the contract. The plaintiffs also alleged that Frederick did not have a certificate of registration as required by § 20-417a and that the contract failed to comply with certain provisions required by the act. They also represent that they brought this matter to the court's attention in their posttrial brief. The problem with the plaintiffs' claims in their posttrial memorandum and on appeal is that the claims are not consistent with the allegations of their complaint and the proof offered at trial.

"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . [T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citations omitted; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 562, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006).

The court summarized the allegations of count two, which incorporated by reference the twenty-seven paragraphs alleged in count one, and which the plaintiffs alleged were a violation of CUTPA, as faulty construction or noncompliance with the blueprints.[8] The court

---

[8] In its memorandum of decision, the court stated: "The court will consider whether or not breach of contract and claims of poor workmanship support a finding of an unfair trade or deceptive trace practice as those terms have

noted the plaintiffs' representation in their posttrial brief, in addition to the allegations of construction defects, that the contract did not contain provisions required by the act.[9] The court found, however, that the plaintiffs did not plead those facts. The court also found that the plaintiffs failed to present evidence that Frederick had failed to register as a home improvement contractor.

We have reviewed the plaintiffs' amended complaint and agree with the court that the plaintiffs did not allege that the defendants violated the act because they failed to allege the statutory basis on which they were relying. See Practice Book § 10-3 (a) ("[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number"). Count one of the plaintiffs' amended complaint alleges common-law causes of action. Furthermore, there are no allegations in count one that the contract omitted notice provisions required by the act.

Count one does allege, however, that Frederick was not registered as a *home improvement contractor*, pursuant to § 20-418. The complaint does not allege that failure to register is a violation of the act. Failure to register as a contractor pursuant to the act is per se a CUTPA violation. See *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 248, 897 A.2d 81 (2006). Despite the ambiguous pleading, the

been interpreted. This does not seem to be a case involving substantial misconduct by [Frederick]. As is typical of new construction, there were items throughout the house that were included in a punch list for [Frederick] to repair. He did repair some of the items, but, once suit started, it was difficult for a working relationship to continue. [Frederick] appeared to be acting in good faith in resolving the complaints, but where faced with claims of approximately $150,000 by the lawsuit, not all of the punch list items could be taken care of."

[9] Our review of the record discloses that the contract at issue was a real estate contract copyrighted by the Greater Hartford Association of Realtors, Inc., to which construction specifications were affixed.

court found that the plaintiffs failed prove that Frederick had failed to register under § 20-417a or § 20-418. The plaintiffs do not claim that the court's finding is clearly erroneous. The court, therefore, properly concluded that the allegations of count two and the evidence presented did not rise to the level of a CUTPA violation.[10] For those reasons, the plaintiffs' claims fail.

### III

The plaintiffs claim that the court abused its discretion by permitting the defendants' expert to testify. The substance of their claim is that they were harmed because, although the defendants disclosed the witness as a licensed home inspector, the witness, they believe, testified as a home improvement contractor. We disagree that the court abused its discretion and that the plaintiffs were harmed by the expert's testimony.

The plaintiffs recited the following facts in their brief, which form the basis of their claim. On October 22, 2003, the defendants filed a request for examination pursuant to Practice Book § 13-9. The defendants sought to have Hodrinsky, a licensed home inspector, examine the house that is the subject of this litigation. After the examination took place, the defendants disclosed Hodrinsky as their expert, including his report. After Hodrinsky was qualified as an expert,[11] he offered

---

[10] In *D'Angelo Development & Construction Co.* v. *Cordovano*, supra, 278 Conn. 248, our Supreme Court held that "the legislature did not intend to render noncomplying contracts unenforceable under [the act]."

[11] In claiming that Hodrinsky testified as a home improvement contractor, the plaintiffs referenced Hodrinsky's testimony: "I have a [bachelor of science] degree and a [master of arts] degree in vocational, technical and industrial education. . . . I've taken courses on the postgraduate level: University of Hartford School of Engineering. I've been to some of the vocational technical schools. I take seminars, continuing education seminars in home inspections. I've been a home inspector now going on thirty years. I have background in architecture and engineering, although I'm not . . . licensed in either of those areas. I've held a home improvement license for a number of years; gave that up because my home inspection business took too much of my time. I taught industrial education for thirty-five years; retired about two years ago—three years ago, actually now, and was department chairman

testimony in accordance with his report. The plaintiffs objected to his testimony, claiming that because he was a home inspector, not a home improvement contractor, he was not qualified to provide estimates of the cost to repair the deficiencies in the plaintiffs' home. The court overruled the objection stating, "Oh, I don't think that's true at all. I think he can quote work that he's– even if he's not licensed to do it. He can quote, if he has some background and basis for offering the quote— or an estimated cost to do the work. . . . It may go to the weight of it . . . ."

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Porter* v. *Thrane*, 98 Conn. App. 336, 339–40, 908 A.2d 1137 (2006).

"With respect to expert testimony, this court has observed that [t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . Further, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) Id., 340. Section 7-2 of the Connecticut Code of Evidence provides: "A

for over twenty years in that school, and the courses I taught that are relative to this or in house construction, house design, home repair and maintenance." Nowhere in the cited testimony did Hodrinsky testify that he was a home improvement contractor.

witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

"Except in malpractice cases, it is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience." *Conway* v. *American Excavating, Inc.*, 41 Conn. App. 437, 448–49, 676 A.2d 881 (1996). Once a witness has been qualified as an expert, any objection to his testimony pertains to its weight, not to its admissibility. *In re David W.*, 254 Conn. 676, 687, 759 A.2d 89 (2000).

The plaintiffs claim that they were surprised that the court permitted Hodrinsky to testify about the estimated cost of repairs because he is not a licensed home repair contractor. They also claim that the court relied exclusively on Hodrinsky's testimony. Practice Book § 13-4 provides in relevant part that "[d]iscovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Section 13-2 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(1) (A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. . . ." The plaintiffs have not identified how or in what manner

the defendants' disclosure of Hodrinsky and his report is at odds with our rules of practice. The plaintiffs assert on appeal that the defendants disclosed Hodrinsky as a home inspector but that his testimony actually was that of a home improvement contractor. The plaintiffs have not cited in their brief, with accurate references to the transcript, any evidence to support that claim. See footnote 11.

If the plaintiffs were surprised that the court permitted Hodrinsky to testify, it apparently was due to their own interpretation of Hodrinsky's report, in which he identified himself as a home inspector and also identified items in the house that needed to be repaired or improved upon and offered an estimate of the cost. The plaintiffs take no issue with Hodrinsky's extensive experience as a home inspector. They take issue with the estimates of repair that he gave at trial, but on appeal, they have failed to identify what portion, if any, of Hodrinsky's testimony is at odds with his report. It appears that the plaintiffs take exception to the court's finding Hodrinsky's testimony more credible than that of their own experts. As this court has said many times, credibility is for the trier of fact to determine. For these reasons, we conclude that the court did not abuse its discretion by permitting Hodrinsky to offer evidence as to the cost of repairing the subject home.

## IV

Finally, the plaintiffs have made more than one dozen claims[12] that the court's factual findings are not supported by the record and that the court did not resolve

[12] "The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue]. . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one." (Internal quotation marks omitted.) *Strobel* v. *Strobel*, 64 Conn. App. 614, 619, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001).

all of the claims they alleged. None of these claims is meritorious. The court's memorandum of decision is enumerated and discusses each of the items of the plaintiffs' allegations of poor workmanship and other damages. There was contradictory evidence on all of the issues, and this court will not disturb the trial court's factual determinations unless they are clearly erroneous. See *Pisani Construction, Inc.* v. *Krueger*, supra, 68 Conn. App. 364. Mere disagreement with the court's findings is not a basis for reversal.

The judgment is affirmed.

In this opinion the other judges concurred.