# CLEM MARTONE CONSTRUCTION, LLC
## *v.* PATRICK DEPINO ET AL.
### (AC 34340)

Robinson, Bear and Keller, Js.

Argued April 11—officially released September 3, 2013

*John J. Esposito, Jr.*, for the appellant-cross appellee (plaintiff).

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Robert D. Mercer-Falkoff*, for the appellees-cross appellants (named defendant et al.).

*Opinion*

KELLER, J. In this foreclosure action, the plaintiff, Clem Martone Construction, LLC, appeals from the judgment of the trial court granting its request for attorney's fees in which the court awarded an amount less than the plaintiff requested. The plaintiff claims that the court erred by applying the incorrect legal standard to determine the amount of attorney's fees due and, thus, improperly excluded from its award attorney's fees for the defense of the counterclaim filed by the defendants Patrick DePino and Gina DePino.[1] The defendants cross appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff.[2] We agree with the plaintiff regarding its appeal

[1] NewAlliance Bank and Nicola Carusone also were named as defendants in the underlying foreclosure action. Carusone did not file an appearance in the matter. NewAlliance Bank claimed an interest in the property at issue in the case by virtue of a mortgage deed from the DePinos. On January 25, 2011, the court rendered partial judgment in favor of NewAlliance Bank as against the plaintiff in accordance with a written stipulation between the two parties in which they agreed that the mortgage on the property held by New Alliance Bank would be prior in right to the mechanic's lien that the plaintiff sought to foreclose. Accordingly, NewAlliance Bank and Carusone are not parties to this appeal, and all references to the defendants refer only to the DePinos.

[2] On their cross appeal form, the defendants stated that they are cross appealing from "[t]he judgment and memorandum of decision and order regarding attorney's fees" and listed January 19, 2012, as the judgment date of the decision being appealed. The substance of their cross appeal in their appellate brief, however, appears to challenge only the December 1, 2011 judgment of foreclosure by sale rendered by the court, *Zemetis, J.*, which subsequently was modified by the court on January 12, 2012. The judgment of foreclosure by sale was based upon the decision and order of the court, *Hon. David W. Skolnick*, judge trial referee, in which the court determined the amount of debt that the defendants owed to the plaintiff pursuant to the plaintiff's mechanic's lien as set off by the defendants' counterclaim. Specifically, the defendants claim that the court "erred in its interpretation of the phrase 'deprived of the benefit reasonably expected' by the [defendants] where the undisputed evidence was that the roof on the [defendants'] home

and, accordingly, reverse the judgment of the court awarding attorney's fees in the amount of $10,368.75. With respect to the defendants' cross appeal, we affirm the judgment of foreclosure by sale.

The following facts as found by the court, *Hon. David W. Skolnick*, judge trial referee, and procedural history are relevant to our resolution of the appeal and cross appeal. The parties entered into a written contract on August 29, 2007, under which the plaintiff was to supply labor, services and materials in connection with the construction of a house on property owned by the defendants that is located in North Branford (property). Under the contract, the defendants agreed to pay the plaintiff $375,000 in several installments, corresponding to the completion of various phases of the construction of the house.

The court found that, under the terms of the contract, "[t]he residence would be constructed in accordance with the residential construction specification[s] attached to the contract, [which would incorporate] the architecture plans provided by the [defendants]. The [defendants were to] have the benefit of the express and implied statutory warranties provided by General Statutes § 47-118 and General Statutes § 47-121, which entitle the purchaser of home construction services to, inter alia, workmanlike construction and habitability. Also, any 'minor variations, including those of a structural nature, between the house constructed and the plans and specifications shall be accepted by the [defendants] provided the same do not detract from the structural or design integrity of the structure.' Further, 'the parties agree that this is the only agreement or contract

was not constructed in accordance with the plans and specifications for this custom-built home, and as such, was aesthetically unacceptable to the homeowners." The defendants have not cross appealed from the judgment of the court, *Zemetis*, J., filed January 20, 2012, granting the plaintiff's request for attorney's fees.

executed by them, and there is no agreement . . . oral or written, limiting, qualifying or modifying the terms of this contract.' In regards to change orders, the parties 'shall agree as to the cost of . . . alterations, additions, modifications or changes and shall submit and execute the same in writing before it shall become effective . . . . However, the fact that alterations, additions, modifications or changes are not submitted in writing shall not be considered a waiver by the [plaintiff] of its right to receive reasonable compensation if such additional work and materials are furnished at the request of the [defendants].'

"Construction of the home began on September 21, 2007. During construction, several changes were made which departed from the specifications in the original architectural and engineering plans. These changes include some that were agreed to explicitly by the [defendants] . . . . Other changes during construction were not agreed to by the [defendants], nor was there a written work order. One such change involved the roof. [The plaintiff] altered the framing of the roof, changing the pitch of the roof to be slightly more steep than originally called for in the plan. [The plaintiff] did not consult the homeowner, engineer, or architect, before making the changes to the roof. . . .

"In February of 2008, as scheduled construction was nearing an end, the [defendants] presented [the plaintiff] with a 'punch list' . . . of various miscellaneous items around the home they wanted addressed, such as doors not closing properly, gaps between appliances and cabinetry, and general painting and general finishing. . . . Thomas Cowell is the building inspector for . . . North Branford. Cowell's office conducted the required building inspections of the [defendants'] home in order to assess whether to grant a certificate of occupancy. A certificate of occupancy certifies that a home has met the minimum building standards and is

safe for human occupancy. All building inspections of the [defendants'] home passed, and no violations of any provision of the North Branford building code were found. On April 2, 2008, a certificate of occupancy was issued by . . . North Branford for the [defendants'] home at [the property]. . . .

"Under the terms of the contract, the final payment installment was due to [the plaintiff] upon issuance of the certificate of occupancy. The [defendants], though, withheld making the last two payments because they were dissatisfied with the workmanship in the construction of their home and the deviations from the original plan, and the problems they believe were caused by those deviations. Two weeks after the issuance of the certificate of occupancy, the [defendants' attorney] sent a letter, dated April 16, 2008, listing six specific items that must be agreed to by [the plaintiff] to be corrected before the [defendants] would render the final amount owed, which, according to their calculations, was $26,125. . . . The letter stated that if [the plaintiff] agreed in writing to repair these items, the remaining amount due on the contract would be paid immediately.[3] [The plaintiff] subsequently returned to the property several times to make repairs and also sent subcontractors in to address the items. [Patrick DePino] was satisfied with the repairs on five of the six items, but was not satisfied with the grading and seeding work done on the backyard, which was his principal concern. Specifically, the [defendants] requested that [the plaintiff] do work on the backyard in grading, drainage, seeding and swale work. [The plaintiff] subsequently seeded and landscaped the backyard. [The plaintiff] attempted

[3] None of the six items listed in the letter related to the roof of the home. Further, the letter stated: "The architect advise[d] me that the [plaintiff] made unacceptable changes, and errors, without authorization. Ask your client about the errors made in the roofline, the fireplace and the floor/ceiling in one bedroom. . . . We are willing to overlook those many other matters if [the plaintiff] will agree as described herein."

to alleviate the drainage issue by running the gutter drain pipes into the underground drainage pipes. [The plaintiff] sent a letter dated June 4, 2008, to the [defendants] indicating work was proceeding on the listed items referenced in the April 16, 2008 letter, and indicating that the total amount due, according to [the plaintiff's] calculations, was actually $31,660.03 and payable immediately. . . . No payment from the [defendants] was received in response.

"The work done by [the plaintiff] did not cure the backyard drainage problem completely. . . . [Patrick DePino], though, did not contact [the plaintiff] again to make further repairs or tell him his dissatisfaction with the backyard water problem until January, 2009. . . . At trial, the parties came to terms on their differing claimed amounts owed and stipulated that the balance due on the contract, taking into account payments and various credits, [was] $28,000." (Citations omitted.)

On November 25, 2008, the plaintiff initiated the underlying action, seeking to foreclose on a mechanic's lien for the improvements it made to the defendants' property.[4] The plaintiff alleged in its complaint that it had filed a certificate of mechanic's lien in writing with the North Branford town clerk, which was duly recorded in the North Branford land records and subsequently served on the defendants on September 2, 2008. On April 8, 2009, the defendants filed an answer to the plaintiff's complaint as well as a counterclaim in which they alleged that the plaintiff "failed to perform [the] labor and services [in connection with the construction of the house on the property] in a . . . good workmanlike fashion." The defendants subsequently filed a revised counterclaim on August 3, 2009, in which they

---

[4] The plaintiff sought to prove the value of the materials and services it rendered by referencing the contract price less the cost of satisfactory completion as the proper valuation.

listed nineteen specific ways in which the plaintiff failed to perform labor and services in a good workmanlike fashion, including its "failure to comply with [the] original plans" and "unauthorized change to original architectural plans for roof line, roof framing and roof pitch to create a roof and home framing not in accordance with original design."

Beginning on March 11, 2010, a bench trial was held on the plaintiff's foreclosure claim and the defendants' counterclaim. In its memorandum of decision filed October 19, 2011, the court found in favor of the plaintiff on the foreclosure of its mechanic's lien and found that the plaintiff had substantially performed the contract between the parties. The court found that the defendants had proven their counterclaim in the sum of $9125 and, thus, ordered the defendants to pay to the plaintiff $18,875—the difference between the sum of damages for their counterclaim and the $28,000 unpaid balance on the contract to which the parties had stipulated at trial. At trial, the plaintiff also made a claim for attorney's fees pursuant to General Statutes § 52-249 (a).[5] The court declined to make any award or determination regarding attorney's fees because it concluded that the plaintiff had "moved for attorney's fees prematurely, as § 52-249 (a) applies to allow the award of attorney's fees only after there has been a motion for judgment to foreclose and hearing as to the form of foreclosure judgment or a limitation of time for redemption."

On November 1, 2011, the plaintiff moved for judgment of strict foreclosure of its mechanic's lien and

---

[5] General Statutes § 52-249 (a) provides: "The plaintiff in any action of foreclosure of a mortgage or lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. The same costs and fees shall be recoverable as part of the judgment in any action upon a bond which has been substituted for a mechanic's lien."

filed an affidavit of attorney's fees and a bill of costs. The plaintiff filed a memorandum of law in support of its request for attorney's fees on November 10, 2011. On December 1, 2011, the court, *Zemetis, J.*, issued notice of judgment of foreclosure by sale. Thereafter, the defendants filed two motions to open the judgment of foreclosure by sale and to extend the sale date on December 28, 2011, and January 10, 2012, respectively.[6] On January 12, 2012, the court, sua sponte, ordered a modification of the judgment of foreclosure by sale in which it set a new date of sale. In a memorandum of decision filed January 20, 2012, the court found that the plaintiff was entitled to $10,368.75 in attorney's fees. On January 27, 2012, the plaintiff filed a motion to reargue the decision of the court, *Zemetis, J.*, regarding attorney's fees. In its motion, the plaintiff argued that the court had applied an incorrect hourly rate to calculate the award of attorney's fees. The court denied the plaintiff's motion for reargument on February 8, 2012. On February 23, 2012, the plaintiff appealed from the decision of the court, *Zemetis, J.*, regarding attorney's fees. On the same day, the defendants cross appealed from "the judgment and memorandum of decision and order regarding attorney's fees."[7] Additional facts will be set forth as necessary.

## I

## THE PLAINTIFF'S APPEAL

We first address the plaintiff's claim on appeal. The plaintiff claims that the court erred by applying the incorrect legal standard to determine the amount of

---

[6] The record does not reflect any order from the court in which it granted or denied the defendants' motions to open.

[7] As noted previously in this opinion, the defendants' cross appeal appears to challenge only the December 1, 2011 judgment of foreclosure by sale rendered by the court, *Zemetis, J.*, that was based upon the decision and order of the court, *Hon. David W. Skolnick*, judge trial referee, filed October 19, 2011. See footnote 2 of this opinion.

attorney's fees due to it under § 52-249. Specifically, the plaintiff argues that the court improperly applied the decision of this court in *Russo Roofing, Inc.* v. *Rottman*, 86 Conn. App. 767, 863 A.2d 713 (2005), and, in turn, improperly excluded from the award of attorney's fees an award for the defense of the counterclaim filed by the defendants. We agree.

The following additional facts as found by the court, *Zemetis, J.,* are relevant to the plaintiff's appeal. In support of its request for attorney's fees, the plaintiff's counsel submitted an affidavit and supplemental affidavit, which reflected a total of approximately $37,000 in attorney's fees.[8] The defendants opposed the plaintiff's request for attorney's fees to the extent that it included any attorney's fees related to the defense of the defendants' counterclaim. The contract between the parties did not contain a clause or provision allowing for the collection or award of attorney's fees as a remedy for breach of contract. The court concluded that General Statutes §§ 42-150aa and 42-150bb were inapplicable to this case because the construction contract between the parties did not provide for the award of attorney's fees and there was no other written agreement between the parties that provided for an award of attorney's fees.

The court also concluded that the holding of this court in *Russo Roofing, Inc.,* was binding on its evaluation of the plaintiff's request for attorney's fees. Specifically, the court concluded that it was bound by the holding "that the attorney's fees under § 52-249 [(a)] should be awarded for 'the foreclosure aspects of the [action].' " The court also acknowledged that the plaintiff's "burden to prove substantial performance of its

---

[8] The plaintiff's counsel also submitted a memorandum of law in support of its request for attorney's fees in which he argued that all of the legal services in the case were required to establish the defendants' indebtedness to the plaintiff, which, in turn, also required the plaintiff to overcome the defendants' defenses and counterclaim.

contractual obligations [was] intertwined with the defense of the counterclaim . . . ." The court stated that "simply because [the defendants] asserted the instant counterclaim in the context of [the plaintiff's] existing mechanic's lien foreclosure action, [the plaintiff's] attorney's fees incurred for defending the counterclaim should not be imposed upon [the defendants]." The court found that, of the 211.5 hours of work described in the affidavits submitted by the plaintiff's counsel in support of its request for attorney's fees, 59.25 hours related to the foreclosure aspect of the case and that an hourly rate of $175 per hour was reasonable. The court, therefore, awarded $10,368.75 in attorney's fees after finding that amount to be attributable to the plaintiff's prosecution of the mechanic's lien foreclosure.

We begin by setting forth our standard of review and relevant legal principles. "[T]he amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and *the law.* . . . However, analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Moasser v. Becker,* 107 Conn. App. 130, 139, 946 A.2d 230 (2008).

Connecticut adheres to the "American rule" regarding attorney's fees under which successful parties are not entitled to recover attorney's fees in the absence of statutory or contractual authority to the contrary. *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC,* 308 Conn. 312, 326, 63 A.3d 896 (2013). Thus, "a specific contractual term may provide for the recovery of attorney's fees

and costs . . . or a *statute* may confer such rights."
(Emphasis added; internal quotation marks omitted.)
Id., 327. Of particular relevance to this case, § 52-249
permits the recovery of attorney's fees in an action to
foreclose a lien, upon obtaining judgment of foreclo-
sure, when there has been a hearing as to the form of
judgment or the limitation of time for redemption.

"[I]n a foreclosure of a mechanic's lien, a contractor
is entitled to the value of the materials that it furnished
or the services that it rendered in the construction of
a project. . . . The reasonable value of the materials
and services can be proven by: (1) providing evidence
that the contract price represents the value of a contrac-
tor's materials and services . . . (2) *demonstrating the
contractor substantially performed such that the con-
tract is the proper valuation of its materials and ser-
vices* . . . or (3) submitting evidence of the cost to
complete the work . . . ." (Citations omitted; empha-
sis added; internal quotation marks omitted.) *E & M
Custom Homes, LLC* v. *Negron*, 140 Conn. App. 92,
104–105, 59 A.3d 262, cert. granted on other grounds,
308 Conn. 912, 61 A.3d 1099 (2013). "[T]he purpose of
the [mechanic's lien] statute is to give a contractor
security for labor and materials. . . . If the materials
are not furnished, and the work is not done, in the
construction, raising, removal or repairs of a building,
there can be no lien." (Internal quotation marks omit-
ted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 806, 17
A.3d 40 (2011).

In *Russo Roofing, Inc.* v. *Rottman*, supra, 86 Conn.
App. 769, this court considered the plaintiff's claim on
cross appeal that the trial court improperly denied its
claim for attorney's fees pursuant to § 52-249. The par-
ties had entered into a written contract in which the
plaintiff agreed to replace the roofs on the defendant's
house and garage in exchange for payment from the
defendant. Id. The plaintiff brought suit to foreclose a

mechanic's lien on the defendant's property for the value of the materials and labor it furnished, and the defendant counterclaimed, alleging that the plaintiff improperly performed the work, which resulted in damage to her house. Id. The trial court had rejected the plaintiff's claim for attorney's fees under § 52-249 and, instead, awarded the plaintiff fees under § 42-150aa (b),[9] which applies to attorney's fees in actions based on consumer contracts. Id., 775–76. After concluding that the plaintiff was entitled to attorney's fees under § 52-249, this court reversed the judgment of the trial court regarding attorney's fees and remanded the case with instructions for the court to take into account the attorney's fees that it awarded to the plaintiff under § 42-150aa in fashioning its award of attorney's fees under § 52-249. Id., 777. Specifically, after noting that a literal interpretation of §§ 42-150aa and 52-249 would result in the plaintiff receiving an award of duplicate attorney's fees, this court stated that "[a]ttorney's fees under § 42-150aa would be for the contract aspects of the action, and attorney's fees under § 52-249 would be for the foreclosure aspects of the action." Id., 776.

In the present case, the plaintiff argues that, before the court could have concluded that the plaintiff was entitled to foreclose on its mechanic's lien or could have determined the amount of the defendants' debt,

---

[9] General Statutes § 42-150aa provides in relevant part: "(a) The holder of any contract . . . entered into on or after October 1, 1979, the subject of which is money, property or services intended to be used primarily for personal, family or household purposes and which contains a provision for payment of attorney's fees of a creditor, seller or lessor, shall not receive, claim or collect any payment for attorney's fees (1) for an attorney who is a salaried employee of such holder or (2) prior to the commencement of a lawsuit.

"(b) If a lawsuit in which money damages are claimed is commenced by an attorney who is not a salaried employee of the holder of the contract . . . subject to the provisions of this section, such holder may receive or collect attorney's fees, if not otherwise prohibited by law, of not more than fifteen per cent of the amount of any judgment which is entered."

the court first needed to conclude that the plaintiff had substantially performed its obligation under the contract. The plaintiff argues that, therefore, the court's award of attorney's fees should have included an award for the legal work related to the defense of the defendants' counterclaim because the success of its foreclosure claim was contingent upon evidence it submitted in support of its proof of substantial performance and, consequently, its repudiation of the defendants' counterclaim, which effectively alleged that the plaintiff failed to substantially perform. Moreover, the plaintiff also argues that the court improperly interpreted *Russo Roofing, Inc.*, to require the exclusion of attorney's fees for the defense of the defendants' counterclaim after it concluded that § 42-150aa does not apply in this case. The defendants argue that the court was correct in applying the standard set forth in *Russo Roofing, Inc.*, and properly excluded an award for attorney's fees incurred by the plaintiff's attorney in defending the defendants' counterclaim. We agree with the plaintiff to the extent that its defense of the defendants' counterclaim was necessary to the success of the foreclosure of its mechanic's lien.

Preliminarily, we agree with the court's conclusion that "attorney's fees under § 52-249 [(a)] should be awarded for the foreclosure aspects of the [action]." (Internal quotation marks omitted.) We conclude, however, that the court abused its discretion by excluding from its calculation of an award for attorney's fees all legal work related to the defendants' counterclaim, leaving no possibility for the plaintiff to obtain attorney's fees for legal work that was common to the prosecution of its foreclosure claim and the defense of the defendants' counterclaim. In its memorandum of decision, the court acknowledged that the plaintiff's "burden to prove substantial performance of its contractual obligations [was] intertwined with the defense of the

counterclaim" because the determination of the defendants' debt and, thus, the success of its foreclosure claim was contingent upon the plaintiff's ability to prove that it substantially performed its obligations under the contract. Moreover, the court noted that, because the defendants had contested that the plaintiff had substantially performed its obligations under the contract, the plaintiff could not recover under the mechanic's lien statute, General Statutes § 49-33,[10] unless it proved substantial performance.[11]

Despite these acknowledgements, however, the court improperly interpreted the decision of this court in *Russo Roofing, Inc.*, to require the complete exclusion from its calculation of an award for attorney's fees any legal work related to the defense of the defendants' counterclaim, irrespective of whether such work also was necessary to the plaintiff's ability to prove its substantial performance as part of the foreclosure claim. It is evident from the court's blanket exclusion of all legal work regarding the defendants' counterclaim that it improperly failed to consider legal work that necessarily related to the plaintiff's foreclosure claim solely

[10] General Statutes § 49-33 (a) provides in relevant part: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances . . . and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected . . . or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot . . . is subject to the payment of the claim."

[11] Although demonstrating substantial performance is not the only method of ascertaining the value of materials and services to which a contractor is entitled when foreclosing a mechanic's lien; see *E & M Custom Homes, LLC* v. *Negron*, supra, 140 Conn. App. 104–105; we agree with the court's conclusion that the plaintiff necessarily had to prove its substantial performance under the contract before it could succeed in its foreclosure claim in this case because the plaintiff sought to prove the value of the services and materials it rendered by referencing the contract price as the proper valuation and because the defendants had contested the issue of substantial performance in their counterclaim.

because it also related to the defense of the counter-claim. In *Russo Roofing, Inc.*, this court instructed the trial court to take into account the attorney's fees awarded to the plaintiff under § 42-150aa in fashioning its award of attorney's fees under § 52-249 in order to avoid the risk of awarding duplicate attorney's fees to the plaintiff. This risk arose only because, in addition to the attorney's fees to which it was entitled for the foreclosure action under § 52-249, the plaintiff also was entitled to attorney's fees under § 42-150aa because the action was based on a consumer contract.

Here, the court properly concluded that § 42-150aa did not apply,[12] yet improperly excluded from its consideration all legal work related to the defense of the defendants' counterclaim. The wholesale exclusion of all legal work related to the counterclaim was improper because, in order to succeed on the foreclosure claim, the plaintiff's counsel necessarily had to defend against the defendants' counterclaim, which could have precluded the plaintiff from foreclosing on its mechanic's lien if the court had concluded, on the basis of the counterclaims, that the plaintiff had failed to render substantial performance under the contract. Moreover, the plaintiff's defense of the defendants' counterclaim directly correlated to the amount of the mechanic's lien on which it ultimately was able to foreclose because the court offset the defendants' debt under the lien with the damages they proved under their counterclaim. Therefore, although the amount of an award of attorney's fees rests in the sound discretion of the court, the court here abused its discretion by failing to consider the legal work performed by the plaintiff's counsel in defending the counterclaim in the calculation of the

---

[12] We agree with the court's conclusion that § 42-150aa does not apply in this case because the construction contract between the parties did not contain a provision providing for the payment of attorney's fees and, therefore, was not a contract contemplated by the statute.

award of attorney's fees under § 52-249. Accordingly, having found error in the court's method of calculating its award, the judgment awarding the plaintiff attorney's fees in the amount of $10,368.75 cannot stand, and the case must be remanded to the court to reevaluate the appropriate amount of attorney's fees in light of the foregoing analysis.

## II

### THE DEFENDANTS' CROSS APPEAL

We now turn to the defendants' cross appeal. The defendants claim that the court erred in its interpretation and application of one of the factors of substantial performance. Specifically, the defendants claim that the court misinterpreted the phrase "deprived of the benefit reasonably expected" in determining whether the plaintiff substantially performed its obligations under the contract. They also claim that the court's finding that the defendants "received the benefit reasonably expected under the contract notwithstanding deviations from the plans for the construction of the home" was unsupported by the evidence. (Internal quotation marks omitted.) Further, the defendants argue that, as a result of the court's erroneous findings regarding this factor, the court erred in its conclusion that the plaintiff substantially performed its obligations under the contract. In addition, the defendants argue that the court erred by failing to award them damages for the plaintiff's failure to construct the roof of the house according to the plans and specifications in the contract. We are not persuaded by any of the defendants' claims.

The following additional facts, as found by the court, *Hon. David W. Skolnick*, judge trial referee, in its October 19, 2011 memorandum of decision, are relevant to the defendants' cross appeal: "In examining the totality of facts and circumstances surrounding the performance of the contract . . . [the plaintiff] substantially

performed all items of the building contract, except for some minor nonworkmanlike deficiencies which could be remedied by modest expenditures in relation to the complete cost of the contract. . . . [T]he damages as a consequence of [the plaintiff's] substandard performance total barely 2 percent of the contract price. It cannot be said that this minimal amount, in terms of the entire cost to construct the home, is significant enough to wholly deny [the plaintiff] payment on the remaining amount of the contract. . . . [A]t the time the certificate of occupancy was issued . . . making the final payment due under the terms of the contract, the [defendants'] home was substantially completed within the specifications of the contract. . . .

"[A]lthough not dispositive, a certificate of occupancy was issued for the home by . . . North Branford on April 2, 2008 . . . which attests to the home's compliance with applicable building codes in a condition suitable for occupancy [and] constitute[d] some evidence of substantial performance of a contract to construct a habitable residential home. Consideration of other factors also supports a finding that [the plaintiff] substantially performed the contract. Foremost, any issues that the [defendants] have with the workmanlike efforts of [the plaintiff] did not substantially deprive them of the benefit they had reasonably expected to receive under the agreement. While there were undoubtedly minor deviations from the original plan and certain areas of construction that were not done in a workmanlike manner, these deficiencies in construction were not so comprehensive as to substantially frustrate the expectations of the [defendants] in having a home built to their custom specifications. Additionally, the [defendants] can be adequately compensated for any nonworkmanlike deficiencies in the form of offsetting damages on [their] counterclaim. Further . . . [the plaintiff] was willing to cure its deficiencies,

and acted in good faith in performing the contract. . . . [The plaintiff] worked to fix the problems that the [defendants] identified on both their punch list and in their subsequent letter dated April 16, 2008. In fact, Patrick DePino testified that [the plaintiff] fixed five of the six items in that letter to his satisfaction. Furthermore, the court credits the testimony of Tom Martone[13] that he would have returned to the [defendants'] home to further attempt to fix any deficiencies, but was not contacted by the [defendants] regarding their further concerns with his workmanship. These actions support a finding that [the plaintiff] acted in good faith in fulfilling its requirements of the contract. . . .

"[The plaintiff] unilaterally changed the pitch of the roof in order to make it easier to frame and did not seek the input or permission of [the defendants], the architects or structural engineers prior to making the change. Nevertheless . . . the change to the pitch of the roof did not impact in a substantial way the structural integrity of the home. However, the change to the framing of the roofing system impacted the subjective aesthetics and 'design integrity,' as stated in the contract, of the home from the original plan. Even [the plaintiff] stated that the change in the framing of the roof made the home look different; in his opinion, giving it better 'curb appeal.'

"Nonetheless, it cannot be said that a hired contractor unilaterally changing the roof of a custom built home, prior to informing or receiving any input from the homeowner, is in workmanlike fashion according to industry standards. Of the differing remedial amounts given by [the defendants' home inspector John P.] Flanagan, the court finds the $3250 figure to be more appropriate in this instance. This is so because the roof as built by

---

[13] The plaintiff is a father-son partnership in the business of constructing residential homes of which Tom Martone is the son.

[the plaintiff] does substantially conform to the [defendants'] expectations, and a complete dismantling of the roof is too drastic a remedy in this instance. This is especially so where in this case substantial and credible testimony was offered that the roof structure overall is sound and the prevailing look of the hip roof conforms to the original plans, albeit now with a slightly more steep slope which may actually provide some ancillary benefits." (Citations omitted.)

In addition, at trial, the plaintiff testified that, when Patrick DePino initially noticed the change to the roofline, he did not ask the plaintiff to change the roof. Martone also testified that a steeper roof would provide the added benefit of shedding ice and water buildup more readily. Cowell testified that the structural integrity of the roof was not decreased by the changes to the pitch made by the plaintiff. He also testified that the changed pitch improved the appearance of the house. Flanagan, the professional property inspector who inspected the defendants' house, testified that the roof was installed in a reasonable and workmanlike manner. Flanagan testified that $3250 would be needed for adjustments and repairs to the roof and that $18,250 would be required for a full restructuring of the roof. Chris Marseglia, an instructional engineering consultant, testified that increasing the roof pitch as the plaintiff did would have improved the roof structurally. Barry Steinberg, a structural engineer, testified that he did not believe that the changes to the roof system brought any unusual or extra stress to the framing of the house and stated that he would have recommended the same change in roof pitch if he had been asked for his advice as a structural engineer during the construction of the house.

A

We first address the defendants' claim that the court erred in its interpretation and application of the phrase

"deprived of the benefit reasonably expected" in its evaluation of whether the plaintiff substantially performed its obligations under the contract. The defendants claim that the court erred as a matter of law in concluding that they received the benefit they reasonably expected because there was undisputed evidence in the record that the roof built by the plaintiff was materially different from the roof specified in the house design plans and was not aesthetically pleasing to the defendants. Further, the defendants appear to claim that the court's erroneous application of this one factor rendered invalid the court's ultimate conclusion that the plaintiff's work constituted substantial performance. We disagree because the defendants' claim has misconstrued both the findings of the court and the law of substantial performance.

We first set forth our standard of review and the law governing the doctrine of substantial performance. "The trial court's determination of the proper legal standard in any given case is a question of law subject to our plenary review." (Internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC,* supra, 308 Conn. 326. "The doctrine of substantial performance shields contracting parties from the harsh effects of being held to the letter of their agreements. Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial." (Internal quotation marks omitted.) *Mastroianni* v. *Fairfield County Paving, LLC,* 106 Conn. App. 330, 340–41, 942 A.2d 418 (2008).

"Although the issuance of a certificate of occupancy may be evidence of substantial performance, it is not

dispositive of the question. . . . Other factors to be considered include the extent to which the injured party will be deprived of the benefit reasonably expected, the extent to which that party can be adequately compensated for the deficiency of performance, the extent to which the performing party will suffer forfeiture, the likelihood that the performing party will cure his failure in light of the circumstances and his reasonable assurances, and the extent of good faith and fair dealing on the part of the performing party." (Internal quotation marks omitted.) *Pettit* v. *Hampton & Beech, Inc.*, 101 Conn. App. 502, 508, 922 A.2d 300 (2007); see also *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 60, 829 A.2d 102 (2003) (noting our Supreme Court has approved these same factors as set forth in § 241 of Restatement [Second] of Contracts as standard for determining whether failure to perform is material). "The standards of materiality [are] to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. [Section 241] therefore states circumstances, not rules, which are to be considered in determining whether a particular failure is material." (Internal quotation marks omitted.) *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 60.

The determination of whether a party has substantially performed its obligations under a contract entails a case-by-case consideration of multiple factors, none of which necessarily is dispositive on its own. See *Pettit* v. *Hampton & Beech, Inc.*, supra, 101 Conn. App. 506–508; *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 79 Conn. App. 60. *The extent to which* the injured party has been deprived of the benefit it reasonably expected is only one of these factors and, by its terms, indicates that it is a discretionary determination to be made by the trier of fact regarding the *degree* of injury, rather than a question of whether *any* such deprivation

occurred. As such, we decline the defendants' invitation to treat this one factor as dispositive to the determination of whether the plaintiff substantially performed its obligations under the contract. Likewise, we find no merit in the suggestion that the court's finding regarding this factor was erroneous merely because some evidence supports a finding that the roof differed from the original design plans and was not aesthetically pleasing to the defendants. The defendants contracted for the construction of the entire house and the determination of the extent to which they were deprived of the benefit they reasonably expected entailed a consideration of the plaintiff's entire construction efforts, not just its work on the roof.

Contrary to the defendants' assertion on appeal, the court did not find that they "received the 'benefit reasonably expected' under the contract notwithstanding deviations from the plans for the construction of their home." Instead, the court found that any issues the defendants had with the workmanlike efforts of the plaintiff "did not *substantially deprive* them of the benefit they had reasonably expected to receive under the agreement" and that "the roof as built by [the plaintiff] does *substantially conform* to the [defendants'] expectations . . . ." (Emphasis added.) Similarly, while acknowledging certain "minor deviations from the original plan and certain areas of construction that were not done in a workmanlike manner," the court found that none of the deficiencies in construction were "so comprehensive as to *substantially frustrate* the expectations of the [defendants] in having a home built to their custom specifications." (Emphasis added.) As such, the court appropriately made findings regarding *the extent to which* the defendants were deprived of the benefit they reasonably expected, as suggested by the court's use of qualifying language regarding the degree of deprivation, such as the word "substantially";

it did not make a blanket finding that the defendants received the benefit they reasonably expected. Accordingly, we conclude that the court properly interpreted and applied this factor of substantial performance in its evaluation of whether the plaintiff substantially performed its obligations under the contract.

## B

Having concluded that the court applied the proper legal standard, we now turn to the defendants' claim that the court erred in finding that the defendants "received the benefit reasonably expected under the contract notwithstanding deviations from the plans for the construction of their home";[14] (internal quotation marks omitted); and that the plaintiff substantially performed the contract in light of the nonconforming manner in which the roof of the house was built. The defendants claim that the court's findings regarding the benefit they reasonably expected to receive under the contract were unsupported by the evidence and that, consequently, the court erroneously concluded that the plaintiff's work constituted substantial performance.[15] We are not persuaded.

We first set forth our standard of review. "The determination of [w]hether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine. . . . [Our Supreme Court has]

[14] As explained in part II A of this opinion, in challenging the court's application of the proper legal standard, the defendants have misconstrued the findings of the court regarding the extent to which they were deprived of the benefit they reasonably expected under the contract. Accordingly, we confine our analysis in this section to whether the relevant findings of the court regarding this factor of substantial performance, as stated in its October 19, 2011 memorandum of decision, were supported by the record.

[15] The defendants appear to challenge only the findings of the court regarding the extent to which they were deprived of the benefit that they reasonably expected; they do not challenge the findings of the court regarding the other factors it considered in concluding that the plaintiff substantially performed the contract.

long held that a finding of fact is reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . . The analysis necessarily involves an inquiry into the totality of facts and circumstances surrounding the performance of the contract." (Citation omitted; internal quotation marks omitted.) *Pettit* v. *Hampton & Beech, Inc.*, supra, 101 Conn. App. 506.

On the basis of our thorough review of the record, we conclude that there is ample evidence in the record to support the court's findings underlying its conclusion that the plaintiff substantially performed the contract, including the finding that the defendants were not substantially deprived of the benefit they reasonably expected. The record reflects that the court had before it photographs of the roof as it was built and the design plans of the house, which depicted the design and pitch of the roof as agreed to by the parties. On the basis of a comparison of these exhibits, the court reasonably could have concluded as it did that the roof as built substantially conformed to the defendants' expectations, that the overall roof structure was sound and that the prevailing look of the hip roof conforms to the original plans. The court's findings were supported further by the testimony from Cowell, Marseglia and Steinberg, all of whom testified to the structural benefits of the plaintiff's changes to the roof pitch. The court's findings also were supported by the testimony from Flanagan that the roof was installed in a reasonable and workmanlike fashion. Further, Martone testified that Patrick DePino did not ask him to change

the roof when he noticed the change in the roofline. Likewise, none of the six items listed in the letter from the defendants' attorney demanding repairs related to the roof of the home, and the letter stated that the defendants were willing to overlook, among other things, errors made in the roofline, if the plaintiff made the six changes listed in the letter. This evidence supports the court's finding that none of the construction deficiencies were so comprehensive as to substantially frustrate the expectations of the defendants.

Accordingly, there was more than sufficient evidence in the record to support the court's findings that the defendants were not substantially deprived of the benefit they reasonably expected to receive under the contract, even with respect to the roof construction. As noted previously in this opinion, the defendants do not challenge the remaining findings of the court underlying its conclusion that the plaintiff substantially performed under the contract, and we, therefore, will not disturb the court's findings in this regard.[16] Because we are not left with the definite and firm conviction that a mistake has been made, we conclude that the court did not err in finding that the defendants were not substantially deprived of the benefit they reasonably expected to receive or that the plaintiff substantially performed its obligations under the contract.

C

The defendants also claim that the court erred by failing to award them damages for the plaintiff's failure

---

[16] In concluding that the plaintiff substantially performed its obligations under the contract, the court also considered and made findings regarding each of the other factors relevant to the doctrine of substantial performance. See *Pettit* v. *Hampton & Beech, Inc.*, supra, 101 Conn. App. 506–508. Specifically, the court found that a certificate of occupancy had issued, that the plaintiff was willing to cure its deficiencies and took steps to do so, that the plaintiff acted in good faith in performing the contract and that the defendants could be adequately compensated for the deficiencies in the plaintiff's construction by offsetting their debt that was due under the plain-

to construct the roof of the house according to the plans and specifications in the contract. Specifically, the defendants argue that the court erred by failing to award them damages in the amount that their home inspector testified would be required to completely dismantle and rebuild the roof. We disagree.

The following additional facts as found by the court are relevant our resolution of this part of the defendants' cross appeal. Flanagan, the defendants' professional property inspector, testified that $3250 would be needed for adjustments and repairs to the roofing system and that about $18,000 would be required for a full restructuring of the roof, which would entail a complete tearing down and dismantling of the roof. The court concluded that the defendants proved this part of their counterclaim in the amount of $3250 for appropriate adjustments and remedies to the roof system.

"The trial court has broad discretion in determining damages, and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Little Mountains Enterprises, Inc.* v. *Groom*, 141 Conn. App. 804, 809, 64 A.3d 781 (2013).

We conclude that the amount of the court's damages award was not clearly erroneous. In its memorandum of decision, the court independently evaluated the part

tiff's foreclosure claim with the damages that they proved in their counterclaim.

of the defendants' counterclaim in which they alleged that the plaintiff failed to perform labor and services in a good workmanlike fashion by making "unauthorized changes to [the] original architectural plans for roofline, roof framing and roof pitch to create a roof and house framing not in accordance with [the] original design." Although the court found that the change to the framing of the roofing system impacted the subjective aesthetics and design integrity of the home, it also found that the change in roof pitch did not impact substantially the structural integrity of the home and that the roof as built substantially conformed to the defendants' expectations. In support of its findings, the court specifically credited testimony that the overall structure of the roof was sound and that the prevailing look of the hip roof conformed to the original design plans. On the basis of these findings, the court determined that $3250 was an appropriate award for this part of the defendants' counterclaim. The court's award was supported directly by Flanagan's testimony that $3250 would be required for repairs and adjustments to the roof. The defendants argue that the court erred by not also awarding the additional cost required for a complete restructuring of the roof. It was well within the court's discretion, however, to determine that the cost of remedial repairs and adjustments was a more appropriate measure of damages for this particular part of the defendants' counterclaim, especially after determining that a complete dismantling of the roof would be "too drastic a remedy . . . ." Accordingly, the court's award was supported by the evidence and was not clearly erroneous.

On the plaintiff's appeal, the judgment awarding the plaintiff attorney's fees is reversed and the case is remanded with direction to redetermine the appropriate amount of attorney's fees that the plaintiff may recover in accordance with this opinion. On the defendants' cross appeal, the judgment of foreclosure by sale is

affirmed and the case is remanded with direction to set a new sale date.

In this opinion the other judges concurred.